FLORENCE F. HASKINS, Plaintiff, *v.* MYRON B. KELLY, as Trustee, School District No. 7, Town of Greece, Defendant.

Supreme Court, Equity Term, Monroe County, May 1, 1948.

*Robert F. MacCameron* for plaintiff.
*William G. Easton* for defendant.

CRIBB, J. This is an action in ejectment brought by the plaintiff against the defendant now in possession of certain premises formerly used as a schoolhouse under a written lease. The lease is dated September 24, 1833, and was executed by one Edward J. Frisbee, lessor, and " the Trustees and inhabitence of School District No. 7, in the Town of Greece, viz: William Lowden, William Pullis and Edward J. Frisbee, Trustees of said District." The leased premises are described as " All that Certain Piece or Parcel of Land, being one-quarter of one acre of land lying on the road running east from the said Frisbee's house being the same on which the District School House now stands, it being on the north side of said road." The lease contained the following: " To Have and to Hold the said premises, with all and singular the privileges and appurtenances thereunto belonging, unto the said party of the second part * * * for and during and until the full end and term of, viz, So Long as it shall be used for a School House, or so

long as the district occupies it for that use." The lease further provided that the second party on the expiration of the term of the lease "shall quietly and peaceably deliver up the possession of the said premises" to the first party. The lease provided only a nominal rent of one dollar, receipt of which was acknowledged by the execution of the instrument. The lessee was obliged to pay all taxes, charges and assessments to be taxed, charged or assessed upon the premises.

The plaintiff, through mesne conveyances and by inheritance from her mother, is now the owner of the Edward J. Frisbee farm including that portion thereof occupied by the school district under the above-mentioned lease.

In 1930, the district purchased from plaintiff a U-shaped parcel of land entirely surrounding, except on the front, the leased parcel of land, so that the present picture reveals a schoolhouse standing on land the fee of which is in the plaintiff while the district has the fee to a strip of land adjoining the leased land on both sides and the rear.

From the minute book of the district it appears that about 1899, the district tore down the old schoolhouse and built a new one in its place on the leased land. In 1906 it voted to paint the schoolhouse and increased the insurance on the building. In 1915, a hot air furnace was installed by the district and in 1928 it was voted to install electric lights, and in 1930 some improvements were made to the schoolhouse.

Since 1944, the schoolhouse has been closed and used neither for the holding of classes or the holding of school meetings. In the years 1945, 1946 and 1947, the school meetings have been held at Braddock Heights Fire House. The lower windows of the school have been boarded up, the glass in the upper window is broken out. The schoolhouse has been allowed to deteriorate generally and prowlers and intruders have entered or attempted to enter the building.

The closing of the school was not a temporary or emergency act suddenly forced upon the district. The sending of pupils to the Hilton school was a progressive arrangement as appears from the minutes of successive meetings held by the voters of the district. With the passing years it appears that the voters became more impressed with the inadequacy of the schoolhouse to afford necessary and modern facilities for the pupils of the district. As early as May, 1929, it was voted to "send all High School pupils to Hilton High School". Later it was voted from time to time to send certain grade pupils to the

Hilton School, and finally at a school meeting held May 2, 1944, it was voted to " abolish " the school and send all pupils to the Hilton School.

From all of these acts on the part of the voters and officers of the district it is obvious that the district has ceased to use the schoolhouse for any school purposes and has no intention to do so in the future. Under date of March 25, 1947, the attorney for the district received a letter from the Division of Law of the State Education Department, which was received in evidence, reading as follows: " Where a school district contracts for the education of its children in 'another district the voters at any school district meeting may determine to reopen the school of the district and furnish instruction within the district. Therefore, until a district becomes consolidated with another district or is centralized, it can never be said that it has abandoned its school house or ceased to be used for school district purposes. Of course, Section 194 of the Education Law requires that the annual meeting be held in the school house at 7:30 o'clock in the evening. While the district maintains its separate identity, it is required to hold an annual meeting and the school house is to be used for that purpose."

Despite the statement contained in that letter that the district is required to hold its annual meeting in the schoolhouse, the district failed to do so but held its next annual meeting in May at a fire house, thereby evidencing that it had no desire to try to prevent the termination of the lease by using the schoolhouse in any manner.

The defendant district now contends that the lease is not terminated as it has not *finally* abandoned the schoolhouse for school purposes. I am not impressed with this argument, nor with the advice contained in the letter above quoted when considered in the light of the facts here presented. If it is true that the defendant, having contracted for the education of its children in another district, may not be held to have abandoned its schoolhouse or ceased to use it for school purposes, because of the fact that it might at some time vote to reopen the schoolhouse and furnish instruction within the district, or unless the district is consolidated with another or is centralized, then we find a situation here where the plaintiff might have to stand by for any number of years or forever patiently awaiting the happening of any of these contingencies. Under such a theory, if the voters of the district never should change their minds and vote to reopen the school, and no consolidation or central-

ization ever took place, the lease nevertheless would never terminate, the schoolhouse could rot down and bushes and burdocks grow up in its place. Such a determination is beyond the realm of reason.

The defendant district further urges that subdivision 2 of section 461 (now § 402) of the Education Law prevents any judicial determination of a " forfeiture " of the lease. It reads in part as follows: " 2. Whenever the education of all the children of any school district shall have been provided outside the district for a period of five years, or more, &ast; &ast; &ast; and the site of the schoolhouse or other grounds used for school purposes shall have been unused for a like period, the inhabitants of a district entitled to vote, shall have the power, by a majority of the votes of those present, to determine that such site or grounds, and buildings thereon, are of no further use to the district and to direct the sale thereof, &ast; &ast; &ast;."

By virtue of these provisions defendant maintains that it is powerless to determine that the land described in the lease or the building thereon is of no further use to the district. Its error in this argument is that the provisions of the section quoted relate to lands and buildings the fee to which is in the school district. The purpose of the section is to empower school districts to sell and convey their real property. Obviously they could not sell and convey title to property which they held only under a lease. Furthermore, subdivision 2 of said section of the Education Law was added by chapter 610 of the Laws of 1945, approximately one year after the schoolhouse was closed and the district voted to " abolish " the school.

The defendant district further contends that the lease has not terminated because it " was voidable only for a condition broken and cannot be terminated without a judgment at law in favor of the plaintiff (landlord) who now claims forfeiture." The defendant fails to distinguish between a limitation and a condition in the creation of estates, and is in error in assuming the plaintiff herein claims " forfeiture ". In support of his position defendant cites two cases, *Allen* v. *Brown* (60 Barb. 39) and *Arkenburgh* v. *Wood* (23 Barb. 360). These cases are distinguishable from the instant case and the courts there recognized the distinction between " limitation " and " condition " as applied to leases. In the first (p. 44), the lease contained a condition with express right of re-entry for condition broken, and the court said: " The condition in the lease was not a limitation of the estate, which would authorize a landlord to take peaceable possession at its determination; but the estate was a condi-

tionable one   *   *   *.'' The lease in the second cited case was one in perpetuity to a church for the purposes of a church and subject to forfeiture should the property be turned to private or secular use. This was held to give the lessor right to re-enter for condition broken. The facts in these cases are wholly different from those of the instant case. In this case the facts are undisputed that the district in May, 1944, voted to '' abolish '' the school and send all children to the Hilton School; and that thereafter the schoolhouse has been closed and used by the district for no purpose whatever. The provision in the lease contained the words '' so long as '', and limited the term to the happening of a specified contingency, namely, when the district should cease to use the premises '' for a schoolhouse '' or to occupy '' it for that use ''. This provision is one of limitation, not a condition, and the district's rights to possession expired upon the happening of the named contingency, and may not be revived. (See *Leonard* v. *Burr*, 18 N. Y. 96, 99.) In *Lyon* v. *Hersey* (103 N. Y. 264, 269), the court said: '' The difference between a limitation, and a condition, is defined to be, that in order to defeat the estate in the latter case, it requires some act to be done, such as making an entry, to effect it, while in the former, the happening of the event is, in itself, the limit beyond which the estate no longer exists, but it is determined by the operation of the law without requiring any act to be done by any one.'' (See, also, *Riesenfeld, Inc.*, v. *R-W Realty Co., Inc.*, 223 App. Div. 140, and cases cited.) I therefore hold that the term of the lease in question terminated when in 1944, the defendant voted to '' abolish '' the school and send the children to the Hilton school and thereafter ceased to use for any purpose the schoolhouse or the lands on which it stands.

The other question to be determined is whether the surrender of the premises to plaintiff by defendant district shall include the schoolhouse now standing thereon. At the time the lease was executed a schoolhouse stood on the land as leased. There is no evidence as to when or by whom it was built. Defendant's position is that nothing but land was ever leased to the district and that the plaintiff, prior to the commencement of this action, and her predecessors in title, never claimed or intended to claim ownership in the building. Counsel for defendant, stating in his brief that the very first words of importance in the lease were: '' Parcel of land   *   *   *   on which the District School House stands '', says: ''That language alone is subject to one inference, to wit, that the District owned the school house and

the landlord (plaintiff's predecessor in title) was only leasing *land*. In this instance the word 'District' was an adjective of possession modifying the word ' School House '." It is my opinion that the word " District " next preceding the words " School House " was descriptive only. If the word " District " had not been used, the building referred to might have been *any* schoolhouse, but the obvious intent was to indicate the schoolhouse then being used by the district. If it had been the intention of the parties to there express the ownership of the schoolhouse, it seems that the word *" District's "* would have been used, thereby indicating possession. Defendant's counsel insists that the words in the lease, " with all and singular the privileges and appurtenances " cannot be construed to refer to the building then standing on the leased lands, and says: " No one in drawing a written instrument intending to lease a house or building such as a schoolhouse would rely on the word ' appurtenances ' to cover such a situation." He argues that if the lessor owned the building, the lease should have so stated and expressly provided that it was being leased with the land. If this be true, then, under our court rulings, if the district claimed ownership of the building, it was even more incumbent upon the latter to insert appropriate language in the lease denoting such ownership and reserving the right to remove the building at the expiration of the lease term. There is no provision in the lease giving defendant the right to remove the schoolhouse upon the termination of the lease term nor has defendant proved any such right by any agreement collateral to the lease. Neither as argued by defendant can such an agreement be established by provisions contained in deeds given by plaintiff's predecessors in title specifically reserving the " school house lot on which the same is situated * * * so long as the same is used for school purposes". Such provisions cannot be deemed as bestowing any rights upon the defendant district which was not a party to such deeds of conveyance. (*Beardslee* v. *New Berlin Light & Power Co.*, 207 N. Y. 34, 39.)

In support of the district's claim of ownership of the schoolhouse, counsel stresses the acts of the district subsequent to the execution of the lease by way of making repairs, demolishing the old schoolhouse, building a new one in its place and later making improvements to it. Such acts do not necessarily denote ownership. Even if the lease had provided that the schoolhouse was a part of the leased premises, it was nevertheless the duty of the district as tenant, in the absence of any provisions to the contrary, to keep the building in ordinary repair; the building

of the new schoolhouse was a replacement which the district, having demolished the old one, was bound to make since at the expiration of the lease term it was charged with surrendering up the premises in as good condition as they were in at the commencement of the term. To fail to have replaced the old building would have constituted waste. (*Andrews* v. *Day Button Co.*, 132 N. Y. 348; *Agate* v. *Lowenbein,* 57 N. Y. 604; *Bedlow* v. *N. Y. Floating Dry Dock Co.*, 112 N. Y. 263, 280–281.)

Counsel for defendant in his brief, conceding the general rule that buildings are presumptively a part of the land, relies on the exception which is recognized when a building is erected by a tenant on leased lands for the purposes of trade or business, and which may be removed by him at the expiration of the lease term. He sites *Howe's Cave Association* v. *Houck* (66 Hun 205, affd. 141 N. Y. 606), *Ombony* v. *Jones* (19 N. Y. 234) and *Crater's Wharf, Inc.,* v. *Valvoline Oil Co.* (196 N. Y. S. 815). These cases are distinguishable from the instant case in that the lessee in each case, *after* the execution of the lease, erected a building or structure on the leased land for trade or business. The lands were vacant when the leases were executed. The same reasoning applies to *Searl* v. *School District No. 2 in Lake County* (133 U. S. 553) cited by defendant. Furthermore, defendant has submitted, and I find, no New York State authority holding that the erection of a schoolhouse is subject to the rule pertaining to trade fixtures. However, granting for the moment that the new schoolhouse erected by the district could be classed as a trade fixture, the district may not now remove it if to do so would leave the premises in worse condition than when received, and such would be the result in this case if the present schoolhouse were removed. (See *Bedlow* v. *N. Y. Floating Dry Dock Co., supra.*) The difficulty with defendant's position is that counsel proceeds on the assumption that the district owned the schoolhouse standing on the lands when the lease was executed, while as a matter of fact the record is devoid of any evidence to that effect. There is no evidence as to when or by whom the schoolhouse standing on the premises on the date of the lease was built or owned. We can only speculate. The lessor may have used it once as a tenant house, and later permitted its use as a schoolhouse, or the district may have built it as a schoolhouse on lands in which it had no interest either by deed or lease. To this court the latter surmise seems less reasonable than the first.

It is true, as asserted by defendant, that the schoolhouse now standing on the leased lands was not placed there or paid

for by the plaintiff owner of the land or by any of her predecessors in title, but was built and paid for by the district. However, it was a replacement, and not a new building erected on *vacant* lands.

The defendant having assumed under the lease the occupancy of the premises, both the land and the building, and enjoyed the rights and privileges accorded it by the lease, may not now question the landlord's title. (*Jones* v. *Reilly,* 174 N. Y. 97; *Loughran* v. *Ross,* 45 N. Y. 792, 794–795.) In the latter case the court said: " A lease of lands and premises carries with it the buildings and fixtures on the premises, and the tenant, accepting a lease of the premises without excepting the buildings, takes a lease of the lands with the buildings and fixtures, and acknowledges the title of the landlord to both, and is estopped from controverting it."

Counsel for defendant district seems to have taken an erroneous position in urging that the burden is on the plaintiff to show an express provision in the lease indicating that it included both the land and the building. The contrary is the rule. The burden is on the defendant to show some agreement whereby the right to remove the building was reserved to it. (*Talbot* v. *Cruger,* 151 N. Y. 117, 120.) Defendant has not met this burden.

In conclusion defendant urges that it would be grossly unfair and inequitable to surrender to plaintiff the present schoolhouse which was built with the taxpayers' money, and permit her to profit at the expense of the defendant district. Were we to forget the legal principles involved and consider only the equities of the parties, we would find that the district has had the use of the lands in question for 111 years at a total rental of $1. The schoolhouse now on the lands originally cost $700. A furnace and electric lights were subsequently installed. Assuming that these improvements also cost $700, we have a building costing $1,400, which is now about sixty years old and in need of extensive repairs — even for school purposes. Assuming plaintiff could now sell it " as is " for $1,400, the total cost of the use of the land per year to the district would have been less than $13 — not an unreasonable rental in the opinion of this court.

The plaintiff should have judgment for the relief demanded in the complaint, with costs.

Findings and proposed judgment may be submitted accordingly.