RICHARD H. PEASE, Appellant, *v.* THE CITY OF CHICAGO, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

Courts of general jurisdiction, in the city of Chicago, may examine into the proceedings of the Common Council, as to all matters connected with a tax, or assessment, without a resort to the common law writ of *certiorari*.

The Common Council of the city of Chicago, has no authority to levy a tax or assessment, for the purpose of collecting money, to pay for improvements, voluntarily and previously made, without the order of the council.

Pease *v.* City of Chicago.

THIS was a proceeding under a special assessment warrant of the city of Chicago.

Joseph N. Hendricks, city collector, filed in the Cook County Court of Common Pleas, his report, warrant, assessment roll, return, and notice of sale.

The report states that special warrants, attached, duly issued and signed, were delivered to him, on or before the second Tuesday of October, 1858.

That he published in corporation paper, notices, for thirty days, of the receipt of said warrants, and that, in default of payment, the taxes and assessments therein mentioned, would be collected, etc..

That he has given ten days' notice of his intended application for judgment upon said warrants, by publication in the corporation paper, and filed 'a copy of notice with certificate of publication.

That the annexed schedule is a correct list of lands, etc., with the taxes, assessments, interest, and costs, thereon unpaid, and prays judgment against the same.

Collector's affidavit to same.

The special warrant, No. 367, was signed by the mayor, comptroller, and attested by the city clerk, and recites that the Common Council of Chicago, on the 4th day of October, 1858, confirmed the assessment of $31,000, made by commissioners, upon the real estate of the West Division of said city, deemed benefited by macadamizing West Lake street, from *Halsted* street to the city limits, in pursuance of an order of said Common Council, made July 19, 1858, which assessment roll is headed thus:

" ASSESSMENT ROLL.

" A description of the real estate in the West Division of the city of Chicago, deemed benefited by macadamizing Lake street, from *Morgan* street to the city limits (west), with the valuation thereof, and the sums of money severally assessed thereon for benefits, by the commissioners, to wit;" in which assessment roll, among other lots or parcels of land, are the following, headed thus:

CANAL TRUSTEES' SUBDIVISION OF SEC. 7, T. 39, R. 14 E.

| Name of Owner. | Description. | S. Lot. | Lot. | Block. | Valuation. | Assessment. | |
|---|---|---|---|---|---|---|---|
| | | | 1 | 55 | 1500 | 42 | 23 |
| | | | 2 | | 1600 | 45 | 25 |
| | | | 3 | | 1600 | 45 | 25 |
| | . | | 4 | | 1600 | 45 | 25 |
| | | | 16 | | 1600 | 45 | 25 |
| | | | 17 | | 1600 | 45 | 25 |

The final footing of the whole, is $31,000.

Commands said collector to collect the several sums in said warrant, of the goods and chattels of the owners of said lots, and return the same in thirty days from date, and dated October 6th, 1858.

Collector's return to said warrant states, that he has collected the assessments on all lots therein marked " paid ;" that he has demanded payment on those not marked " paid," and has not been able to find personal property, out of which to make the same.

Collector's notice of application for judgment on the 27th of January, 1859.

Judgment headed thus :

" Warrant, No. 367, west, dated October 6th, 1858, for macadamizing West Lake street, from Halsted street to the city limits."

The description of property in question, valuation, assessment, damages and costs, are in the following form, but no names of owners, viz :

CANAL TRUSTEES' SUBDIVISION, SEC. 7, T. 39, R. 14 E.

| Name. | Description. | S. Lot. | Lot. | Block. | Valuation. Dollars. | Amount of Assessment. Dol's. | Cts. | Ten per ct. Costs. Dol's. | Cts. | Costs. Cts. | Total. Am't due. Dol's. | Cts. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1 | 55 | 1500 | 42 | 23 | | | | | |
| | | | 2 | 55 | 1600 | 45 | 25 | | | | | |
| | | | 3 | 55 | 1600 | 45 | 25 | | | | | |
| | | | 4 | 55 | 1600 | 45 | 25 | | | | | |
| | | | 5 | 55 | 1600 | 45 | 25 | | | | | |
| | | | 16 | 55 | 1600 | 45 | 25 | 4 | 53 | | | |
| | | | 17 | 55 | 1600 | 45 | 25 | 4 | 53 | | | |

The judgment recites that on the 5th day of February, 1859, due notice having been given of application, that objections were filed, that the objections were insufficient, and are over-ruled, and judgment rendered for the amount of assessments, costs, and ten per cent. damages additional, and orders sale of lands, etc.

Richard H. Pease excepted, and prayed an appeal as to lots in question, which is allowed.

Pease, as owner of lots 1, 2, 3, 4, 16 and 17, in block 55, section 7, township 39 north, 14 east, filed the following objections :

1st. Said lots were, knowingly and intentionally, fraudulently assessed on a valuation of $1,600 each, and worth but $400 each.

2nd. Said lots were assessed for $45.25 each, whereas by law they could not be assessed to exceed $12 each.

3rd. The orders for making and confirming said assessment were procured by fraud.

4th. The matter of said improvement was not referred to a committee to prepare and report plan, with estimate of expense, etc.

5th. Said improvement was commenced, and partially performed under a private contract, between John C. Evans and part of the property owners, dated May 15th, 1858, and the order of the Common Council for said improvement, dated July 19, 1858, was made for the purpose of enforcing said private contract, according to the specifications of the same.

6th. The election of commissioners was without the previous nomination of the mayor.

7th. City has no authority to commence improvement until 50 per cent. collected, and paid into treasury office, which was not done.

8th. Assessment not made in conformity with the order of council, and ten days' notice of expiration of time of filing of objections not given.

9th. Assessment roll and report of commissioners not returned in forty days after their appointment.

Appended is—report of city superintendent, showing estimate of improvement, "according to the specifications set forth in the contract for said work, between John C. Evans and the owners of the property interested in said improvement."

Also report of committee on streets and alleys of West Division, recommending said improvement.

Order, that West Lake street be macadamized in accordance with the superintendent's estimate and specifications.

Order, that the sum of $31,000 be assessed upon property deemed benefited by said improvement, and that the council do now elect three respectable and disinterested freeholders to make said assessment.

Passed July 19th, 1858.

All of which objections said Pease offered to prove by witnesses, by the Common Council, by the proceedings of this case, and by affidavits, showing said lots to be worth not exceeding four to five hundred dollars.

City Attorney demurred orally to all of said objections.

Court sustained said demurrer to all of said objections, except the 5th, and overruled all of said objections, except the 5th, and refused to admit any evidence in support of any of said objections so overruled.

To which overruling and refusal said Pease excepted.

Demurrer to 5th objection overruled, and issue taken upon the same.

City introduced in evidence, orders of July 19th, 1858, for macadamizing West Lake street, from Halsted street to the city limits, and for assessing $31,000 for the same, and election of three commissioners to make said assessment.

Pease *v.* City of Chicago.

Also proceedings of commissioners, and their notice and assessment roll, with oath of commissioners.

The return of commissioners recites their appointment on the 19th day of July, 1858, the publication of notice of the time and place of their meeting, that they had fixed a valuation upon the real estate in the assessment roll, and assessed the benefits resulting thereto by said improvement, and certifies that such assessment does not exceed three per centum per annum on the property assessed.

Notice of meeting of commissioners to make assessment.

Certificate of publication of said notice.

Assessment roll.

CANAL TRUSTEES' SUBDIVISION OF SEC. 7, T. 39, R. 14 E.

| Names. | Description. | S. Lot. | Lot. | Block. | Valuation. | Assessment | |
|---|---|---|---|---|---|---|---|
| | | | 1 | 55 | 1500 | 42 | 23 |
| | | | 2 | 55 | 1600 | 45 | 25 |
| | | | 3 | 55 | 1600 | 45 | 25 |
| | | | 4 | 55 | 1600 | 45 | 25 |
| | | | 16 | 55 | 1600 | 45 | 25 |
| | | | 17 | 55 | 1600 | 45 | 25 |

And other property.

Certificate of city clerk of return of said assessment roll, showing that the same was filed in the clerk's office, September 1st, 1858.

Assessment notice, first published September 3rd, 1858, to file objections to said assessment on or before the 13th day of December, 1858, at 7 o'clock P. M.

Certificate of publication of the same.

Order of confirmation, made October 4th, 1858, and ordered that a warrant be issued for the collection of assessments.

Warrant issued October 6th, 1858.

To all of which the defendant below objected. Objection overruled, and defendant below excepted.

.Defendant below introduced in evidence contract, dated May 15th, 1858, between John C. Evans, of the first part, and Stephen F. Gale, and other property owners, of the second part, in which said Evans agrees to macadamize Lake street, from Halsted street to the city limits, in a certain manner, and upon certain terms and conditions therein set forth.

The parties of the second part agree to pay the party of the first part therefor in the manner therein specified.

Also that, " whereas, it would be necessary hereafter for the Common Council of the city of Chicago to permit the said street to be improved as aforesaid, and to order an assessment for the same, so as to reach and compel all the property benefited thereby to pay its due proportion of the cost of said improvement, they, the parties of the second part hereto, agree to pay

in addition, their due proportion of the cost or expense of making and levying said assessment." The party of the first part agrees to receive the assessment roll when made, and credit the parties of the second part thereon, for as much money as may have been paid by them, and that he will look to said assessment roll for his remuneration for the work to be done.

Security was given for the performance of said contract.

*Reuben Taylor* was called by defendant below and testified. Could not certainly state how much of Lake street was macadamized by the 7th day of June, 1858; some of it was macadamized, but not one-quarter, he should think; that by the 19th day of July one block or more was done, but he cannot say how much more.

*John Evans* was called by defendant below and testified, that by the 19th day of July, 1858, he should think one block or more of Lake street was macadamized; thinks some work was done on other blocks west; on the 12th day of August, thinks the day of date of contract with the city; these blocks were finished and some other work done, cannot say how much; the blocks finished were the blocks next west of Halsted street; says that he does not consider that he did the work under the contract with the property owners; considered the contract as a petition to the council to have the work done; had no contract with any one else before he made the contract with the city; was never released from the contract by the property holders; he called on property owners to pay for work done, under said contract with them; S. F. Gale paid him on such work, $700, and another person paid him something; others called on refused to pay; he demanded pay of persons who signed the contract; never called on Mr. Goodrich for pay under said contract.

The city introduced in evidence the following, as an estimate of city superintendent:

" The city superintendent of public works, under a requisition from the committee on streets and alleys of the West Division, submits the following as an estimate of the cost of macadamizing West Lake street, from the west line of Halsted street to the city limits—the whole to be done according to the specifications set forth in said contract for said work between John C. Evans and the owners of property interested in said improvement, viz., and which specifications are herewith submitted:

"From west line of Halsted street to west line of
    Morgan street, 1264 feet (lineal), at $5, per
    contract, - - - - - - - .$6,320.00
"Engineering, Supt., etc., - - - - - 130.00

                                         $6,450.00
"From west line of Morgan street to city limits,
    952 feet (lineal), at $2.60, per contract, - $24,234.00
"Engineering, Supt., etc., - - - - 316.00

                                        $24,550.00
                     . $31,000

Also a contract between the city of Chicago and John Evans, dated August 12th, 1858, for macadamizing West Lake street, from west line of Halsted street to city limits; in which said Evans agrees to perform said work in the manner and time therein specified; and the said city of Chicago agrees to pay him $30,554.60, in the manner therein specified, "provided no payment shall in any case become due or payable to said Evans upon this agreement, except as said city shall be in funds from the avails of an assessment levied for said improvement; nor shall said city be liable for any delay in collecting said assessment."

Which was all the evidence introduced by the parties in the above cause.

And thereupon the said court rendered a judgment against said lots and parcels of land, severally, for the amount of the said assessment and costs, and also ten per cent. in addition thereto.

G. Goodrich, and J. H. Kedzie, for Appellant.

E. Anthony, for Appellee.

Caton, C. J. There is one question demanding the first consideration in all these cases involving the levy of taxes and assessments by the Common Council of the city of Chicago. The counsel for the city object, that the Court of Common Pleas could not inquire into the regularity of the action of the Common Council, nor even into the question of their jurisdiction in the proceedings which we are now called upon to review, and that the only mode in which those matters can be properly inquired into by the courts, is on a return to a common law writ of *certiorari*. If this be so it puts an end to all further inquiry, and at once relieves us from the labor and responsibility of investigating and deciding the many and perplexing questions which have been

argued at the bar.   Unfortunately the counsel has been misled by the fact that most of the cases found in the reports have been brought up by writ of *certiorari,* where the law had not provided any other mode of reviewing the proceedings of municipal bodies, and when such is the case the writ of *certiorari* must necessarily be resorted to, or those jurisdictions would to a great extent become irresponsible to the law.

Ordinarily the corporate powers of cities have not been required to resort to the courts of law to collect their general and special revenues, and such was the case with Chicago till the passage of the law of 1857.   Before the land on which a tax or assessment was levied could be sold for its payment, that law requires a resort to the courts for its condemnation, and permits the owner of the land to make a defense to the proceeding.   The 14th section of that act, under which this proceeding was instituted, is as follows :

" If, from any cause, the taxes and assessments charged in said collection warrants are not collected or paid on the lands or lots described in such warrants on or before the first Tuesday in January ensuing the date of said warrants, it shall be the duty of the collector to prepare and make report thereof to some court of general jurisdiction to be held in Chicago, at any vacation, special or general term thereof, for judgment against the lands, lots, and parcels of land, for the amount of taxes, assessments, interest and costs respectively due thereon ; and he shall give ten days' notice of his intended application before the first day of the said term of the said court, briefly specifying the nature of the respective warrants upon which such application is to be made, and requesting all persons interested therein to attend at such term ; and the advertisement so published shall be deemed and taken to be sufficient legal notice both of the aforesaid intended application by the collector to said court for judgment, and a refusal and a demand to pay the said taxes and assessment."

Under this section the proceeding is instituted by the collector, and the 43rd section of the same act tells us in what mode the court shall proceed in the matter.   It says :

" It shall be the duty of the court upon calling the docket of said term, if any defense be offered by any of the owners of said property, or any person having a claim or interested therein, to hear and determine the same in a summary way, without pleadings ; and if no defense be made, the said court shall pronounce judgment against the said several lots, lands, pieces or parcels of land, as described in said collector's reports, and shall thereupon direct said clerk to make out and issue an order for the sale of the same, which said order shall be in form, as nearly as

may be, of that prescribed in the twenty-ninth section of an act entitled 'An Act concerning the public revenue,' approved February 26, 1839, by the general assembly of this State: *Provided,* That in all such cases where a defense is interposed, the trial of any issue or issues therein shall be disposed of with as little delay as possible, consistently with the demands of public justice at said term. But should justice require that for any cause the suit as to one or more owners should be delayed for more than twenty days, judgment shall then be rendered as to the other owners and lands, and process shall issue for the sale thereof, the same as in all other cases."

Here then is an express provision that the owner or person interested in the land may make defense, and it cannot, we think, be reasonably contended that such defense shall not embrace everything which shows that the tax or assessment, to collect which the proceeding was instituted, ought not to be collected. Less than this would be but a mockery of justice. Anything which a court of law would examine into under a writ of *certiorari* may be considered on this trial, and even more, for the court may inquire *de hors* the proceedings of the Common Council, and see if any facts exist which renders the tax or assessment illegal, as well as into any substantial irregularity in the mode of assessing it, for which a court of law should set them aside.

In this case a defense was made. It was proved on the trial that a part of the improvement for which the assessment was levied, had already been made by private parties, without any contract with or liability by the city authorities, and this assessment was levied in part for the purpose of collecting money to pay for such improvement already voluntarily executed. For this purpose the law gave the Common Council no authority to levy a special assessment upon the property deemed benefited by the improvement already executed. The first section of the seventh chapter of the city charter provides that, " the Common Council shall have power, from time to time, first, to cause any street, alley or highway to be graded, leveled, paved, macadamized or planked, and keep the same in repair," and the second section authorizes the Common Council to levy a special assessment upon the property deemed benefited by such improvement, to pay the expenses thereof. It is in these words: " The expenses of any improvement mentioned in the foregoing section (except side walks and private drains) shall be assessed upon the real estate in any natural division benefited, with the costs of the proceedings therein in proportion, as nearly as may be, to the benefits resulting thereto; *provided,* such assessment shall not exceed three per cent. per annum on the property assessed."

No doubt the Common Council may make the improvement mentioned in the first section, and levy a special assessment to pay the expenses thereof or to reimburse the city treasury ; or they may estimate the cost of any improvement thus ordered, and levy an assessment therefor before the improvement is made, but neither the letter or the spirit of the statute can authorize them to levy an assessment for an improvement which they do not cause to be made. If a party voluntarily improves a street, when no such improvement has been ordered by the council, they cannot adopt the work and become a collecting agency, and create a liability against the owners of the property benefited by the improvement, when no such liability could otherwise exist by law. When an improvement is once made and satisfactorily, by other parties, it is no concern of the Common Council by what means or agency it was made. If it was not caused by them, they are not responsible for it and have nothing to do with it. The law only authorizes them to assess for what they cause to be done. As this assessment was levied in part to pay for improvements already executed, without the order or direction or liability of the Common Council, it was not warranted by the law, and the court erred in rendering judgment for it, and that judgment must be reversed, and the cause remanded.

*Judgment reversed.*