## HUGH MAHER

### *v.*

## THE CITY OF CHICAGO.

1.  CORPORATIONS—*in what manner they may be bound.* Corporations may be bound on implied contracts, to be deduced by inference from their corporate acts, without either note, deed or writing.

2.  A municipal corporation, which by its own acts disregards its ordinances, is estopped from afterwards repudiating such acts.

3.  Where a corporation dealing with individuals, assumes powers upon which the validity of its acts depends, and subsequently it turns out that it does not possess the specific powers relied on, it is not thereby excused from performance of its obligations, if they can be performed through the agency of other powers it does possess.

4.  EVIDENCE—*statements—res gestae.* The statements of officials made during the prosecution of work for a corporation, to persons engaged upon it, are a part of the *res gestae,* and admissible as showing the manner and circumstances under which the work was begun and prosecuted.

WRIT OF ERROR to the Circuit Court of Cook County.

The opinion states the case.

Messrs. D. C. and I. J. NICHOLS, for plaintiff in error.

Messrs. SCAMMON, McCAGG and FULLER, for defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was an action of assumpsit, brought by the plaintiff in error against the City of Chicago, for labor performed by the former in deepening and widening the Chicago river, under the following circumstances: On the 5th of February, 1855, the Common Council condemned, for the improvement of the river, certain real estate situate on its banks, and, amongst others, a portion of two lots belonging to the plaintiff in error. At the same time the Council appointed a committee to assess the benefits and damages to the respective owners for the property condemned. On the 9th of April, 1855, the committee reported, and their report was confirmed. As to the lots owned by the plaintiff in error, the damages for the portion condemned were assessed as equal to the increased value of what remained. As to lots condemned belonging to other persons, in some instances the damages were assessed as greater than the benefits, and in others the benefits as greater than the damages. In the former case the City paid the excess, and in the latter it issued a warrant to its Collector, and collected the excess from the respective owners of the lots. The amount thus paid to the City was over two thousand dollars. Soon after this action on the part of the City, the plaintiff in error commenced dredging the river in front of his lots, and during the years 1855, 1856 and 1857, expended a large sum of money upon this work, the greater part, amounting to over $3500, being expended during the first

year. The labor was performed under contracts made by the plaintiff in error, and he paid for it, but it is clearly proven, and indeed not denied, that this was in pursuance of an understanding between the plaintiff in error and the Mayor of the City, and the committee of the Common Council on Harbors and Bridges, that the plaintiff was to be reimbursed the amount of his advances when an assessment should be made and collected for paying the expenses of the improvement. While the work was being done by the plaintiff in error, it was supervised by the City Superintendent of Public Works, and after its completion it was measured by the City Surveyor. It was also done under profiles furnished by the City Superintendent.

Besides what has been stated, however, there was no formal official action on the part of the City Council for the completion of this improvement, until November, 1865, when the City Superintendent made a report to that body, calling their attention to the subject, and stating that the surveys made under his direction showed the quantity of earth to be removed, to be 154,000 cubic yards, and the expense to be $43,431 60. In the profiles and estimates which accompanied this report, nine thousand one hundred cubic yards of dredging are stated to have been already done by the plaintiff in error, and are included in said estimate of quantity and expense. On the receipt of this report the City Council passed an order directing the work to be completed, and assessing the sum above named upon property deemed to be benefited thereby. It also appointed Commissioners to make the special assessment. The assessment was made, and on the 23d of March, 1857, it was confirmed by the City Council, and on the 16th of April, a warrant was issued for its collection. A portion only of the assessment having been paid, the City, in April, 1857, obtained a judgment in the Common Pleas Court of Cook County, for the residue, which judgment was afterwards reversed in this Court in the case of *Wright* v. *City of Chicago*, 20 Ill. 252, it being there held that the City had no power,

under its charter, to make a special assessment for the purpose of deepening the river. The City having thus failed to derive the means of payment from the source whence they were expected, has refused to pay plaintiff in error for the work done by him.

It should be further stated that in May, 1857, the City entered into a contract with certain parties named Chapin, Eastman and Fox, to do the dredging not yet done, at a certain sum per cubic yard, and it was expressly stipulated in said contract, that they should not require payment until the means to make it should be collected from the special assessment, which the City agreed to "make, levy, and collect, with due diligence." In 1862, the special assessment having become impracticable under the decision of this Court, the City settled with Chapin, Eastman and Fox, paying them the sum due, amounting to nearly thirty-four thousand dollars. In settling with them the City deducted from the total amount of earth excavated, the quantity taken out by the plaintiff in error and one other party, and paid Chapin, Eastman and Fox, for the residue. Of the special assessment above referred to, the sum of thirty-two hundred dollars was assessed against the lots of the plaintiff in error. This assessment he never paid. His lots, however, have, of course, contributed their share of the money paid Chapin, Eastman, and Fox, out of the general revenue of the City.

From this recital of the facts, it appears that the plaintiff has performed work which enured to the benefit of the City, and which the City, by the condemnation of the lots, was under obligation to perform; that this work was commenced and carried forward under a clear understanding with those City officials who ordinarily have charge of this department of the City affairs ; that the plaintiff was to be paid by the City out of a fund to be raised by a special assessment ; that the work was supervised by the City Superintendent during its progress; and that it was finally reported in the City Council, approved, and appropriated by that body, and an

.order passed levying a special tax for its payment. Under these circumstances, on what ground can the City deny its liability?

The counsel for the defendant in error insist, in the first place, that the plaintiff must be presumed to have done the work for his own benefit, as he did it before the City Council directly ordered it to be done, or authorized it to be contracted. If he had done it before the City had taken its action of February and April, 1855, condemning a portion of his and other lots for this improvement, and assessing the benefits and damages therefor, and if there had been no understanding with the Mayor and other City officials as to his payment, this view might be taken with great propriety. The case would then be not unlike that of *Pease* v. *City of Chicago*, 21 Ill. 500, cited by defendant's counsel. But in the actual facts there is no similarity, and the circumstances above referred to rebut all idea that this was a private enterprise executed by the plaintiff for his own benefit, or intended as a gratuity to the public.

It is true there was no express contract made in a form which would, of itself, be obligatory upon the City. But after the work was done, under the circumstances, and with the understanding already mentioned, the Superintendent of Public Works made his report of November, 1856. In that report, or in the papers which accompanied it, the amount of work done by the plaintiff was stated, and thereupon the Council passed an order directing a special assessment, for the purpose, among others, of paying for this identical work. They appointed Commissioners to make the assessment, and when their report came in, they approved it, issued a warrant to collect the money, and actually did collect a small portion. It is this action of the Council that fixes, in our opinion, the liability of the City. Whatever might have been its position, in regard to the plaintiff's claim, but for this action, these proceedings place it beyond controversy. Unless we assume that the Council issued its warrant to compel the payment of money

under pretence of liquidating a liability which they intended afterwards to deny, an assumption we would by no means make, then we must regard it as settled that that body, by a deliberate official act, appropriated the plaintiff's work, and acknowledged it to create a valid debt against the City. To hold otherwise would be to hold, that the Council was endeavoring to raise money, by a compulsory process, upon pretences that were false. The action of the Mayor and other officials may not have bound the Council, but by this proceeding it recognized and ratified that action, and deliberately bound itself. It placed itself in the same position that it would have occupied if it had in the first instance expressly authorized the Mayor to hire the plaintiff to do the work, and to promise him payment out of a fund which it would undertake to collect by a special assessment. It furnished conclusive evidence of the existence of a state of facts, from which the law implies a contract as obligatory as if it had been express.

"If," said this Court, in *De Wolf* v. *City of Chicago*, 26 Ill. 446, " one sees another doing work for him beneficial in its nature, and, by his agent, overlooks the work as it progresses, and does not interfere to forbid it, the work itself being necessary and useful, and appropriates the work to his own use, he might be liable, on an implied promise, to pay the value of the work." Chancellor KENT says, in the second volume of his Commentaries, page 291, "that corporations can be bound on implied contracts, to be deduced by inference from corporate acts, without either a vote, deed or writing, is a doctrine generally established in the Courts of the several States with great clearness and solidity of argument." We do not understand the counsel for the City as denying these principles to be correct legal propositions.

The defendant in error also relies on a provision of the City Ordinances which forbids any improvement, " the expense of which is to be defrayed by a special assessment," to be made, or contracted for by an officer of the City, until fifty per cent. of the costs has been paid into the City Treasury, and a

certificate obtained from the Treasurer to that effect and filed with the City Clerk. It might be sufficient to say that this is not a question of special assessment, this Court having decided that the improvement could not be paid for in that mode, although it was originally so intended by the Council. But a still more satisfactory answer is to be found in the maxim *cujus est instituere ejus est abrogare.*" The power that bound can loose. These ordinances were intended as rules of procedure, to restrain inconsiderate action on the part of the City officers. But certainly if the same body which passed this ordinance chooses to disregard it, and directs a contract to be made independently of its provisions, it can not be permitted afterwards to repudiate its own acts, because this ordinance was not observed. The same rule would apply where, as in this instance, it makes an order directly recognizing and sanctioning a contract, express or implied, that has been made by its officers in disregard of this ordinance.

It is also urged that the plaintiff should not be permitted to recover without payment of the special assessment of $3,200 upon his lots. But the court has held that the city had no power to make such assessment, and that being the case it is difficult to see why the plaintiff should pay it.

It is finally insisted that there was an implied contract; it was that the work should be paid for out of the proceeds of the special assessment which it was intended should be levied, and that assessment having failed the city was under no obligation to pay. It was undoubtedly the understanding between the plaintiff and the city officials that he should be paid out of a fund thus to be raised, in the same way that an express provision, to that effect, was inserted in the contract made with Chapin, Eastman and Fox. But, as in that contract there was also a provision that the city should make and collect the assessment with due diligence, which imposed upon the city the obligation of paying out of its general revenue, if it failed to collect the special assessment; so, when the council recognized and assumed the debt to the plaintiff by including it in its

special assessment, the existence of the debt itself was established, and there was an implied obligation to discharge it in some other mode, if the special assessment failed.   The council, in ratifying the acts of its officers, assumed the collection of a fund in a particular mode, and must be considered as guaranteeing that it possessed the requisite power.   If a municipal corporation, in   dealing   with individuals, assumes that it possesses certain corporate powers, upon which the validity of its acts depends, and it turns out that it does not possess the specific powers relied on, it is not thereby excused from the performance of its obligations, if they can be performed through the agency of other powers that it does possess.   Here was a recognized debt.   It was expected by all parties that it would be paid out of a particular fund, which fund the debtor undertook to raise.   He has failed in this, but the debt remains, and the debtor, having other property equally liable for its payment, must discharge it from that property.   In the contract with Chapin, Eastman and Fox, there was a special provision that they would not require payment until the means should be raised from a special assessment.   Yet this failing, the city properly paid their claim from other sources, and we are unable to perceive any legal or moral difference between their position and that of the plaintiff, except that in the one case the contract was express, and in the other it was implied.   Of course what the city did with other persons is wholly immaterial in this case, except so far as it shows the construction placed, by the city itself, on a similar contract connected with this same improvement.

The counsel for the city contend that the statements of the city officials were improperly received as evidence.   These statements were made at the commencement and during the progress of the work to persons engaged upon it, and are admissible as showing the manner and circumstances under which it was begun and prosecuted.   They are part of the *res gestae*.

We are of opinion that the record discloses a state of facts

from which the law implies a contract on the part of the city to pay for the value of the labor performed.

*Reversed and remanded.*