198    571
e106a 481
e106a 482
198    571
e207  ²163

THE VILLAGE OF PARK RIDGE

*v.*

SILAS W. ROBINSON.

*Opinion filed October 25, 1902.*

1. MUNICIPAL CORPORATIONS—*city has power to contract against a liability from its general fund.* A municipal corporation, when contracting for a public improvement, has power to limit its liability for payment to some special fund to be raised for the purpose and to contract against liability from its general fund.

2. SAME—*when a contractor cannot sue city in assumpsit.* If a contractor agrees with a municipal corporation to construct sidewalks, and expressly agrees to assume the risk of the invalidity of the special tax ordinance and to look only to the fund to be raised by such tax, making no claim against the corporation, in any event, except from the collection of such tax, he cannot sue the city in assumpsit for the amount due him, notwithstanding the ordinance was wholly void, where there was no fraud, concealment, negligence or other wrongful act upon the part of the municipal corporation. (*Maher v. City of Chicago,* 38 Ill. 266, and *City of Chicago v. People,* 56 id. 327, distinguished.)

*Robinson v. Village of Park Ridge,* 100 Ill. App. 409, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Silas W. Robinson, the appellee, brought this action in assumpsit in the superior court of Cook county to recover of the village of Park Ridge, the appellant, the balance of $2968.85 which he claimed the village owed him for constructing sidewalks in said village. The case

was tried by the court without a jury by agreement and on a stipulation of facts. Propositions to be held as law in the decision of the case were submitted on both sides, and the court held that the plaintiff was not entitled to recover, and rendered judgment for the defendant. On appeal by the plaintiff the Appellate Court reversed the judgment and entered judgment of its own in favor of the plaintiff, against the defendant, for the amount claimed.

The facts agreed upon were, in substance, that the president and trustees of the village on June 23, 1894, passed an ordinance providing for the construction of sidewalks on certain streets of the village, which, after describing the location and character of the walk to be constructed, (concerning which there is no dispute,) was as follows:

"Sec. 3. All owners of lots or parcels of land aforesaid are hereby required to construct said sidewalk in front of their lots or parcels of land within ten days after the date of publication of this ordinance, and in default thereof such sidewalk shall be constructed and laid by the village.

"Sec. 4. Said street commissioner shall certify to a bill of the cost of said sidewalk, showing in separate items the cost of grading, materials, laying down and supervision, and file it in the office of the village clerk, together with a list of the lots and parcels touching upon the line of the sidewalk, and the names of the owners thereof, and the frontage on said sidewalk.

"Sec. 5. The village collector is hereby designated the officer to collect the special tax herein provided, and to whom warrants for the same shall be directed.

"Sec. 6. The village clerk shall comply with the provisions of the act to provide additional means for the construction of sidewalks in cities, towns and villages, in force July 1, 1875, and if any lands or lots is delinquent after return of warrant by said village collector, then said village clerk shall make a report of said delinquent

special tax, in writing, to the county treasurer, *ex officio* collector, prior to March, 1894, as required by this act."

The work having been let to Robinson on his bid, a written contract was entered into, duly executed between him and the village, reciting the ordinance in full, and which contract contained among others these provisions:

"The village of Park Ridge covenants to pay to the first party when the contract shall be wholly carried out and the work shall have been accepted by the president and board, and when and as the special tax or taxes levied or to be levied for the same shall be collected, the sum or sums stated in the bids of the first party for doing the work, on file in the office of the village clerk, copies of which are made a part of this contract; that from time to time interest-bearing warrants drawn against and payable out of said special tax or taxes, to be of the usual form of such warrants and to bear interest from date at the rate of six per cent per annum until paid, may be issued to said party of the first part upon estimates to be made by the inspector or such other person as may be appointed by said president and board of trustees, said warrants to be negotiable in terms. * * *

"So far as money shall at the time of the issuance of such estimates be collected upon a special tax or taxes for said work and applicable to the payment of such estimates, such money shall be applied to the payment of such estimates, and for the balance for which no collections are available, the interest-bearing warrants above provided for may be drawn and issued. * * *

"In case the village should become the purchaser of any special tax certificates, such purchase shall not be deemed a collection of such special tax, and no act shall be construed as a collection until the money due has been actually paid into the village treasury. * * *

"No estimate will be issued to the contractor until all claims for labor and material have been satisfied, said sum of money being payable out of the proceeds of any

special tax which shall hereafter be levied for the said improvements, the said party of the first part agreeing hereby to make no claim against said village in any event, except from the collections from the special taxes made or to be made for the said improvements, and to take all risks of the invalidity of said special tax, or any of them, or of the proceedings therein, or for failure to collect the same, and to make no claim against said village, in any event, by reason of any suit or proceedings which may be instituted against said village or any of its officers, preventing or retarding the prosecution of the work.

"If the progress of the work is satisfactory to the president and board and all claims for labor and material are satisfied, then every two weeks estimates will be issued up to eighty-five per cent of the value of the work, and estimates for the remaining fifteen per cent only on final completion and acceptance. It is understood that any excess of the special taxes levied for said improvement over and above the actual cost shall be reserved by the village, so that it may be rebated to property owners when the cost is known, and that said estimates will accordingly be paid fully only when the tax levied for the improvement shall be wholly collected, so that the payments made on vouchers and estimates prior to the full collection of taxes, together with the amount of excess of taxes to be rebated to property owners, shall not exceed the full amount of cash collections in the treasury of said village to the credit of said tax fund."

After the completion of the work, warrants, eleven in number, were issued to Robinson, part in 1894 and part in 1895. The village collector collected $647.16 of the lot owners, which amount was paid to Robinson on said warrants, reducing the total to the amount sued for. Said warrants were duly executed and signed by Robinson, and were all substantially the same, to-wit:

"VILLAGE OF PARK RIDGE, ILLINOIS.

Warrant No. 2.                                    Special Tax No. 23.

Amount $176.01.—For Sidewalk.—Installment No ...

PARK RIDGE, *November 20, 1894.*

"This is to certify that S. W. Robinson or order is entitled to one hundred seventy-six and 01/100 dollars, when collected, from installment No.... of special tax No. 23 on contract for sidewalk, Peale's subdivision. This voucher will bear interest at the rate of six per cent per annum, payable on the first day of July annually, from November 20, 1894, and is issued under the act of legislature approved June 15, 1891, is due with the taxes of 1894, and this voucher can only be paid out of the money received from the above named installment.

"In consideration of the issuing of this voucher I hereby, for myself, heirs, executors, administrators and assigns, accept the same in full payment of the amount herein stated, and relinquish any and all claims or liens I may have against the village of Park Ridge for the work mentioned herein or for the payment of this voucher, except from the collection of the installment herein named."

The county court, on objections filed to the rendition of judgment against delinquent lots, held said ordinance to be void and sustained the objection. Afterward, in August, 1895, the village passed another ordinance purporting to amend said first named ordinance and to levy a special assessment to pay the cost of said work, which had theretofore been completed, under article 9 of the act of 1872 for the incorporation of cities and villages. Afterward the county court sustained objections to the confirmation of the special assessment levied under the last named ordinance and refused judgment thereon, and the petition was dismissed by the court.

It was further stipulated, that shortly before this suit was begun an appointment was made between the plaintiff's attorney and the village board for a meeting to devise ways and means to enforce payment from the lot owners and to effect a settlement of the differences arising out of the failure to collect such tax, but such attorney was unable to keep the appointment, and the

board passed the following resolution and caused a copy of it to be sent to such attorney, to-wit:

"*Resolved,* That said village of Park Ridge still being very desirous to have said indebtedness, if any exists, fully paid and satisfied, it is still ready to receive any suggestion, advice and assistance from said plaintiff, or from any other person interested in the recovery of said indebtedness or other proceeding which may be instituted for that purpose, and render any practicable assistance and exercise any power vested in it to that end, and it does hereby urgently solicit such suggestions, advice and assistance."

But no meeting was had, and soon thereafter the suit was begun.

It was further stipulated "that the pleadings already filed herein shall be taken as sufficient to allow either party to set up any claim or defense not inconsistent with the facts above stated. It is also stipulated that any of the original records or documents above set forth or referred to may be produced on the hearing of this cause, and full copies of the same may be included in the record if it shall seem desirable to either party so to do. If, upon the foregoing facts, the court is of the opinion that the plaintiff is entitled to recover of the defendant, judgment is to be rendered in favor of the plaintiff and against the defendant in such form as the law may require, and for such sum as the court shall, from the foregoing facts, determine plaintiff to be entitled to recover. If, on the other hand, the court is of the opinion, upon the foregoing facts, that the plaintiff is not entitled to recover of the defendant in this action, judgment is to be rendered in favor of the defendant and against the plaintiff for costs of suit."

The court refused to hold as law in the case this proposition submitted by the plaintiff:

1. "That the original ordinance was and is wholly void and incapable of amendment. The present action in assumpsit against the village for the work done was therefore properly brought, and judgment will be given for the plaintiff."

But the following proposition submitted by the plaintiff was held as requested:

4. "The court holds that there is nothing in the constitution or laws of Illinois to prevent the village of Park Ridge from paying for the construction of the sidewalk for said village out of some other fund than that to be derived from the collection of the special tax, since, by its failure to pass a valid ordinance before the work was done, the collection of such special tax and payment from that source by the village has been rendered impossible."

And the court held as law in the decision of the case the following propositions submitted by the defendant:

1. "That upon the facts presented in said case by the stipulation filed herein, and upon which said cause was submitted to the court for its determination, the plaintiff is not entitled to recover, and the finding and judgment should be and must be for the defendant.

2. "That the said plaintiff is bound and concluded in the law by the terms of the contract entered into by him with the said defendant, dated, to-wit, July 17, 1894, set forth in said stipulation and agreement as to facts; that by the terms of said agreement the said plaintiff agreed as follows, to-wit: 'To make no claim against said village in any event, except from the collections from the special taxes made or to be made for the said improvements, and to take all risks of invalidity of said special taxes or any of them, or the proceedings therein, or for failure to collect the same;' that no imposition was practiced by the said defendant in any manner upon the said plaintiff; that the ordinance for the construction of the sidewalk covered by said contract was set forth *in hœc verba* in said contract, and that the plaintiff was bound in the law to know the infirmities, if any, in said ordinance and the power of the corporation in reference to the subject matter thereof, and cannot now, in disregard of the terms of his said contract, hold the defendant,

198—37

the village corporation, by reason of any defect, imperfection or invalidity of said ordinance by reason of any want of power in said corporation, if any, or irregularity of any kind in reference to the adoption or attempted enforcement thereof."

Exceptions were duly taken to rulings of the court in holding and in refusing such propositions, respectively, and to the judgment rendered.

BLACK & BLACK, and JOSEPH A. PHELPS, for appellant:

Courts do not make contracts for parties—they interpret and enforce the contracts which the parties themselves have made. *Hayes* v. *O'Brien,* 149 Ill. 403; *Wilson* v. *Roots,* 119 id. 379; *Wood* v. *Clark,* 121 id. 359.

In this case, the contract having contemplated and provided that payment to the plaintiff would be made only from a fund which might thereafter be created, and the plaintiff having agreed that he would look only to that fund for compensation for the work performed and materials furnished by him, there can be, in an action of this character, no recovery on the contract until the fund so provided to be created is raised. *Snell* v. *Cheney,* 88 Ill. 258; *Arment* v. *Yamhill County,* 43 Pac. Rep. 653; *Clark* v. *White,* 59 Ind. 435; *Jacks* v. *Phillips County,* 25 Ark. 64; *Chambers* v. *James,* 4 Pa. St. 39; *Montgomery* v. *St. Stephen's Church,* 4 W. & S. 542; *Congdon* v. *Chapman,* 63 Cal. 357; *Lyman* v. *Elevator Co.* 62 Fed. Rep. 781.

CHARLES H. BALDWIN, for appellee:

A valid ordinance must precede the making of a local improvement by a municipality in order to justify the collection of a special tax or special assessment. *Weld* v. *People,* 149 Ill. 257; *Railroad Co.* v. *Jacksonville,* 114 id. 562; *Alton* v. *Middleton's Heirs,* 158 id. 442; *Sterling* v. *Galt,* 117 id. 17; *Carlyle* v. *County of Clinton,* 140 id. 512.

The condition of the contract confining the contractor for his pay to the collection of a special tax is impossi-

ble of performance, and the contract is therefore void *pro tanto.* Story on Contracts, (5th ed.) par. 586; *Chicago v. People,* 56 Ill. 333.

The contract is based upon an invalid ordinance and is therefore itself void, except in so far as to bind the municipality to pay for the benefits already received under it.   *Kankakee v. Potter,* 119 Ill. 327; *Louisiana v. Wood,* 102 U. S. 294; *Hitchcock v. Galveston,* 96 id. 350; *Stewart v. Stone,* 127 N. Y. 500; *East St. Louis v. Gas Light Co.* 98 Ill. 415; *Jamieson v. Oil Co.* 128 Ind. 555; *Parker v. Macomber,* 17 R. I. 674.

When an attempted ordinance providing for a local improvement, to be paid for solely by special tax or special assessment, is wholly void and cannot be amended, the contractor has a right of action, generally, to compel the municipality to pay for the work done, of which it has received and enjoys the benefit.   *Maher v. Chicago,* 38 Ill. 267; *Chicago v. People,* 48 id. 417; *Foster v. Alton,* 173 id. 587; *Chicago v. People,* 56 id. 327; *Hitchcock v. Galveston,* 96 U. S. 350; *Stephens v. Spokane,* 14 Wash. 298; *Piemental v. San Francisco,* 21 Cal. 362.

Mr. Justice Carter delivered the opinion of the court:

There was no dispute as to the amount the plaintiff was entitled to recover, if he was entitled to recover at all, and the question is presented here as one of law whether the trial court erred in refusing to hold as law in the decision of the case the first proposition submitted by the plaintiff and in holding the first proposition submitted by the defendant.   These propositions served the same purpose as instructions of similar purport to the jury would have served in directing a verdict had the cause been tried by a jury.   The Appellate Court made no finding of facts and evidently found the facts the same way as the superior court found them, but was of a different opinion as to the legal effect of such facts, and therefore reversed the judgment and rendered judg-

ment for the plaintiff, which was the proper action to take if the judgment of the superior court was erroneous.

From the facts as settled it appears that no fraud or imposition was practiced upon the plaintiff in any manner, but that the village authorities acted in good faith and without any negligence, and did not promise or agree to exercise any power they did not possess or to do anything they had no power to do; that the ordinance was incorporated in full in the contract, and that the plaintiff entered into said contract to construct the sidewalks with as full knowledge of all of the facts involving the validity of the ordinance, and of the contract itself, as the village authorities possessed. It must also be assumed from the finding, as a settled fact, that after the first ordinance was passed and the contract entered into the village used due diligence to collect the cost of the work from the lot owners, and stood ready and willing at all times, and so notified the plaintiff, to use any and all lawful means in its power, and to proceed in any proper way the plaintiff might advise or suggest, to collect from the lot owners such cost, and to pay the same, when collected, over to the plaintiff. The ground upon which the plaintiff contends, and the Appellate Court held, the village is liable, is this, as we understand it: that the village had the power to contract for the building of the sidewalks in question and to pay for the same out of its general revenues, and the ordinance purporting to authorize their construction and payment therefor by special taxation being void, the sidewalks were in reality constructed by the plaintiff, at the request of the village, without any ordinance, and the village having accepted and received the benefit of plaintiff's work and materials must be held liable to pay for the same, as fully as if it had undertaken in the first place to do so, out of its general revenues. It is said further in support of the plaintiff's view, that where a private corporation has received money or other thing of value under

a contract which is *ultra vires*, and which it refuses to perform on that ground, an implied contract arises to refund or to pay for what it has received on the non-enforceable contract, and that municipal corporations should be, and have been, held to the same liability.

We have no doubt that the ordinance was wholly void because it did not provide, in terms or by reasonable intendment, in the manner provided by the act of 1875, that the cost of the work should be paid from special taxes levied or to be levied on the lots touching upon the line of such sidewalks, in any one of the methods provided by the said act,—that is, according to frontage or superficial area, or to value ascertained as the statute provided; and because the ordinance required the owners of such lots to construct the sidewalk in front of their respective lots within ten days, instead of thirty days allowed by the statute, after publication of the ordinance. But without considering the soundness of the doctrine asserted or the extent of its application, no reason is presented, and we know of none, why this asserted liability is of so peculiar a character as that it may not be contracted against. It is not claimed that such a contract of a municipal corporation protecting its general revenues, and guarding against a liability which it might be wholly unable to meet and which it would not voluntarily incur, would be against public policy, and it is difficult to understand upon what ground such a contract fairly entered into can be declared void by the courts or inoperative for any reason. It would seem that the only question ought to be, what is the meaning of the contract? As we have seen, the one in question in this case expressly and in the plainest and most unequivocal language protected and guarded the village against any general liability whatever to pay for the work out of its general revenues,—against the very liability now asserted and by this suit sought to be enforced by the same party who knowingly and voluntarily entered into and

executed the contract on his part. By the contract the village only covenanted to pay *when* and *as* the special taxes levied for the same should be collected. It provided for the issuing to the contractor of interest-bearing warrants payable out of such special taxes. It provided that no purchase of the property or other act of the village should be construed as a collection until the special tax should be paid into the village treasury. By the contract the plaintiff expressly agreed "to make no claim against said village in any event, except from the collections from the special taxes made or to be made for the said improvements, and to take all risks of the invalidity of said special tax, or any of them, or of the proceedings therein, or for failure to collect the same." And in the vouchers or warrants issued to the plaintiff, and which he also signed and accepted, he agreed that in consideration of the issuing of the same to him he accepted them in full payment of the amount stated in them, and relinquished any and all claims which he might have against the village for the work mentioned and for the payment of the vouchers except from the installment of the special tax therein mentioned. It cannot be assumed that the village would have entered into the contract or would have ordered the walks to be constructed without thus limiting its liability. On the other hand, it should be presumed from the facts found that it would not have authorized the work and incurred the indebtedness except upon the terms of the contract which it made with the plaintiff. No reason whatever is assigned why the plaintiff is not bound by this contract, except the one that the ordinance under which the work was done was invalid. But the law charges him with the same knowledge of the invalidity of the ordinance as it attributes to the village trustees, and if he was desirous enough to obtain the contract to agree to take all risks of the invalidity of the ordinance and of the special tax and of the proceedings to collect the same, no reason is perceived

why he should not be bound by his agreement. Presumably, contractors often obtain higher prices for their work because of the assumption of such risks, and that not infrequently they obtain full satisfaction for their contractual demands under invalid ordinances because they are not contested. But be that as it may, it would be a dangerous doctrine to establish, that where there is no fraud, no concealment, no negligence and no wrongful act of any kind on the part of the municipal corporation affecting the rights of the other party to the contract, such other party may avoid his contract on the sole ground of the invalidity of the ordinance under which the work is done, notwithstanding he expressly assumed all risk of the invalidity of such ordinance and agreed not to make the very claim which by his suit he undertakes to assert. Courts have no power to make contracts for parties, or to un-make them, except upon well established grounds, and although upon principles of natural justice municipal corporations, like individuals, ought to pay for what they receive, they cannot be held bound to do so when the claimants have expressly contracted that they shall not be so bound. If it be said that there was no consideration for such an agreement on the part of plaintiff, it is a sufficient answer to say that the undertaking of the village to do what it in fact did do was a sufficient consideration. But even if there was no consideration and the plaintiff had agreed to do the work without compensation and to make a gift of the same to the village, and although the contract, while it remained executory, could not be enforced, yet after it had been fully performed by plaintiff he could not avoid it and recover the value of his work on the plea of no consideration.

It is contended, however, that this court has decided that the contractor can recover in such a case as this, and reference is made to *Maher* v. *City of Chicago*, 38 Ill. 266, and *City of Chicago* v. *People*, 56 id. 327; and *City of East St. Louis* v. *East St. Louis Gaslight and Coke Co.* 98 id.

415, and *Foster* v. *City of Alton,* 173 id. 587, are also cited as supporting the doctrine announced in the two first mentioned cases. In the *Maher case* the city, in its contract with the claimant, assumed a power which it did not possess, and the ordinance was held void for lack of power under its charter to adopt it. In the second case, as we said in *Foster* v. *City of Alton, supra* (p. 591), "the property other than that of the North Chicago Railway Company had already been assessed and had paid the full amount of benefits realized, and the city had made a contract with the railway company by which its property was exempted from assessment. The contractor had done the work in ignorance of the agreement for exemption, and had been induced to accept a contract for payment out of an assessment which the city had agreed not to make but to exempt the property from." Neither of these cases is like the one at bar in respect of the facts, though there are some expressions in the opinions lending support to the plaintiff's view. The village did not, in the case at bar, assume to have a power which it did not possess, and procure money, work or other thing of value from the plaintiff upon the strength of any such assumption, as appears to have been done in the *Maher case.* Nor did it obtain from the plaintiff his labor and materials by concealing from him any facts within its knowledge affecting his rights, as was done in the second case cited. As a general rule, it will be found that in the cases in which the municipal corporation has been held to a general liability, there has been some wrongful act, negligence or default on its part which injuriously affected the rights of the claimant. But there is no such element in this case.

Something is said in the argument to the effect that the village had no power to make the contract as made, limiting its general liability,—in other words, that, like the city of Chicago did in the case in 56 Ill. 327, it assumed a power it did not possess and agreed to do what

it had no power to do under its charter. We need not determine, under the law as it now is, what the effect of such an assumption of authority would be on the rights of the parties, for it is sufficient to say that the village did have the power to make and enter into the contract as it was made. True, as pointed out, the act of 1875 makes no express provision for limiting the liability of the corporation to payment out of the special fund, as made by section 49 of article 9, and by section 74 of the act concerning local improvements; but whether either of these provisions is applicable to the contract in question or not, we have no doubt that the corporation has the corporate power to limit its liability, by contract, to pay only out of the fund which the statute authorizes it to raise for such payment. Such a power, whether expressly given or not, is necessary to other powers expressly granted, and will be implied.

The views we have expressed find some support in *People* v. *Village of Hyde Park,* 117 Ill. 462; *Village of Hyde Park* v. *Corwith,* 122 id. 441; *Hunt* v. *City of Utica,* 23 Barb. 360; (same case in the Court of Appeals, 18 N. Y. 462;) *Fletcher* v. *City of Oshkosh,* 18 Wis. 228; *Clark* v. *White,* 59 Ind. 435; *Arment* v. *Yamhill County,* 43 Pac. Rep. 653; *Jacks* v. *Phillips County,* 25 Ark. 64; *Congdon* v. *Chapman,* 63 Cal. 357; *Chambers* v. *James,* 4 Pa. St. 39; *Lyman* v. *Northern Pacific Elevator Co.* 62 Fed. Rep. 781; *City of Pontiac* v. *Talbot Paving Co.* 94 id. 65; *Hayes* v. *O'Brien,* 149 Ill. 403. See, also, *Farrell* v. *City of Chicago,* (*ante,* p. 558,) and cases cited.

We are of the opinion that the superior court decided correctly in holding the defendant's first proposition and in refusing to hold the plaintiff's first proposition as law in the decision of the case and in rendering the judgment it did render, and that the Appellate Court erred in reversing that judgment and in rendering judgment of its own for the plaintiff. The judgment of the Appellate Court will therefore be reversed and the judgment of the superior court will be affirmed.    *Judgment reversed.*