MICHAEL C. HAYES

*v.*

WILLIAM D. O'BRIEN *et al.*

*Filed at Ottawa March 31, 1894.*

| | |
|---|---|
| 149 | 403 |
| 161 | 446 |
| 149 | 403 |
| 62a | 30 |
| 149 | 403 |
| 68a | 85 |
| 149 | 403 |
| 175 | 335 |
| 175 | 596 |
| 77a | 418 |
| 149 | 403 |
| 91a | [2]504 |
| 149 | 403 |
| 198 | [5]311 |
| 198 | 585 |
| 149 | 403 |
| 204 | [9]100 |
| 204 | [13]104 |
| 206 | [3]167 |
| 149 | 403 |
| 212 | [5] 72 |
| 212 | [4]162 |
| 212 | 164 |
| 113a | [5]169 |
| 149 | 403 |
| 115a | [14]193 |

1. SPECIFIC PERFORMANCE—*whether denied for want of mutuality in optional contract.* The earlier doctrine that the want of mutuality of obligation would render an optional contract incapable of specific enforcement, has been so modified that such agreements to convey, without any corresponding obligation or covenant to purchase, will now be specifically enforced, in equity, if made upon sufficient and valuable consideration. And so, when the agreement to convey is a part of a lease or other contract between the parties, for which the agreement to convey forms the true consideration, the want of mutuality will not avoid the contract.

2. A lease for a term of ten years reserved to the lessor the right to sell the demised premises at any time after date, and then provided : "But no such sale of said land shall be made by said first party without first having given said second party the privilege of purchasing said land upon such terms and at the same price per acre as any other person or purchaser might have offered therefor." The lessor made sale of the premises without notice to the lessee, who, upon learning the fact, offered to pay the price at which the lessor sold the same, and demanded of the lessor and his purchaser a conveyance of the land : *Held,* that the lessee did all that the law required of him, and was entitled to the specific performance of the contract to sell and convey to him on his acceptance of the option.

3. SAME—*when enforced.* Where the contract is otherwise valid, is fairly entered into, and is upon sufficient consideration, equity will enforce it, when there has been an acceptance of its terms by the vendee in apt time. Such a contract is a continuing obligation on the part of the lessor or party giving the option, running with the lease, which the lessee may accept, at his option, within the time limited.

4. CONTRACTS—*rule of construction.* In the construction of contracts the intention of the parties to be ascertained from the words employed, the connection in which they are used, and the subject matter in reference to which the parties are contracting, must control, and courts are powerless to interpolate terms and conditions into the contract to which the minds of the parties have not given assent.

5. Courts will, however, look to the entire instrument, and, if possible, give such construction that each clause shall have some effect and

perform some office, and for this purpose will, so far as practicable, view the contract from the position of the parties at the time it was made, in order to understand their language in the sense in which it was used. Such construction will be adopted, if it can consistently and reasonably be done, as will render the whole contract operative.

6. Same—*whether void for uncertainty of consideration.* An owner of land leased the same for the term of ten years, and reserved the right to sell the premises at any time after the date of the lease, but the lease provided that the lessor should make no sale without first giving the lessee the privilege of purchasing the land upon such terms and at "the same price per acre as any other person or purchaser might have offered therefor:" *Held,* that the contract for the option was not void for uncertainty in the price to be paid for the property, the price being the same as offered by any other person or purchaser, and which the lessor was willing to accept.

7. There is no principle of equity that is violated by such a contract, which is, that the lessee shall have a right to purchase at a price satisfactory to the lessor, and when fairly entered into upon a valuable consideration, if the terms upon which the sale is to be made are fixed in the contract, or the parties have, by the contract, provided the means for their ascertainment, no reason is perceived why a court of equity may not compel its performance.

8. Where the contract appoints the mode of determining the price of land sold, and the price is determined according to that mode, the contract becomes perfect and complete, in all respects as if it had been originally fixed in the writing.

9. Same—*whether void for uncertainty in the description of land—aiding defective description.* A deed or other written contract is not void for uncertainty in the description of the land sold or conveyed, if, from the words employed, the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to in the deed. And a defective description of land may be aided by the conduct of the parties, such as, that the vendor put the purchaser in posession of the premises intended to be conveyed.

10. Description of land—*whether sufficient.* Leased premises were described in the lease as a tract of land in L. county, Illinois, and "being a part of the south half of sections thirty-four (34) and thirty-five (35), in township forty-six (46), north of range twelve (12), east of the third principal meridian, more familiarly known as the Merchant farm." The land was then described as divided into two unequal portions by the right of way of the Chicago and Northwestern Railway Company through said land in a northerly and southerly direction, and the description concluded, "all that portion east of said right of way is leased to said party of the second part:" *Held,* that the description was sufficient to admit evidence *aliunde* the lease to identify the land.

11. JURISDICTION—*granting ancillary relief.* Where a court of equity once acquires jurisdiction of the main purposes of the bill, it will have the right to grant such ancillary or incidental relief as will be necessary to make the relief sought complete.

12. SAME—*in chancery—where suit may be brought.* A bill to enjoin a proceeding at law, simply, under section 3 of the Chancery act, must be brought in the county where the proceedings at law are had. But when the primary object of the bill is to compel a specific performance of a contract for the sale and conveyance of land, the same may be filed in the county where any of the defendants who are necessary parties reside.

13. In this State, jurisdiction of the person invests a court of chancery with power to proceed to a final decree in all that class of cases where it is sought to compel the execution or cancellation of deeds to land. When the relief sought does not require the court to deal directly with the estate itself, the proceeding does not affect real estate, within the meaning of the third section of the Chancery act.

14. SAME—*decree affecting land outside the jurisdiction of the court.* A court of equity having the parties in interest before it, may proceed though the land to which the suit relates may lie without the jurisdiction of the court. The decree, in such case, settles the rights of the parties before the court with respect to some contract, conveyance or fraudulent conduct, and, by attachment or other coercive means, compels the offending party to comply with the requirements of the decree.

15. APPEAL—*whether a freehold is involved.* A bill by a lessee of a term, to whom the lease gives an option to purchase the land, which seeks to have a deed of his lessor set aside and for the specific performance of the agreement to convey the demised premises to the lessee, involves a freehold, and an appeal lies directly from a decree of the circuit court to the Supreme Court.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a bill in chancery, filed by Michael C. Hayes, against William D. O'Brien and Fayette Thompson, in the Superior Court of Cook county, to enforce the specific performance of a contract for the conveyance of land situated in Lake county, and, as auxiliary to this relief, to enjoin O'Brien from the prosecution of a forcible entry and detainer proceeding, brought by O'Brien against the tenant of Hayes, before a

justice of the peace of Lake county.   O'Brien filed a general
and special demurrer to the bill.   Thompson entered a special
appearance and moved to dismiss the bill for want of jurisdic-
tion.   The motion and demurrer were heard together, which
were sustained by the court and the bill dismissed.   From
this decree Hayes prosecutes this appeal.

So much of the contract sought to be enforced material to
an understanding of the opinion is as follows:

"This indenture, made and entered into this eighth day of
April, A. D. 1889, by and between Fayette Thompson, of
Waukegan, Lake county, State of Illinois, party of the first
part, and Michael C. Hayes, of Chicago, Cook county, State
of Illinois, party of the second part:

"*Witnesseth,* that the said party of the first part, for and in
consideration of the covenants and agreements hereinafter
mentioned, to be kept and performed by said party of the sec-
ond part, his assigns, executors or administrators, has demised
and leased unto the party of the second part the following
described land, to-wit: situate in the county of Lake and the
State of Illinois, and being a part of the south half of sections
thirty-four (34) and thirty-five (35), in township forty-six (46),
north of range twelve (12), east of the third principal merid-
ian, more familiarly known as the 'old Merchant farm.'   Said
land is divided into unequal portions by the right of way of
the Chicago and Northwestern Railway Company through said
land in a northerly and southerly direction.   All of that por-
tion east of said right of way, only, is leased to said party of
second part.   To have and to hold the same to the party of
the second part from the eighth day of April, A. D. 1889, to
the eighth day of April, A. D. 1899.   Said party of the first
part hereby reserves the right or privilege of selling that por-
tion of said land at any time from and after this date, but no
such sale of said land shall be made by said first party with-
out first having given said second party the privilege of pur-
chasing said land upon such terms and at the same price per

acre as any other person or purchaser might have offered therefor."

Then follow covenants to pay rent at the rate of one dollar per car-load of gravel removed, etc., and that not less than two hundred and fifty cars per year shall be taken, etc.

The bill alleges that in the month of September, 1889, Thompson, without any notice to complainant, and without giving him the privilege of buying, as he covenanted to do, sold and conveyed the land to O'Brien, who, it is alleged, purchased with full notice of complainant's rights. The bill charges fraud and collusion between O'Brien and Thompson to deprive complainant of the benefits of his lease and his right to purchase, alleges acts of O'Brien and others interfering with complainant in the use and enjoyment of the premises, etc., and seeks to enjoin the same.

Mr. K. R. Smoot, Mr. C. B. Eyer, and Messrs. Monk & Elliott, for the appellant:

The rule requiring mutuality does not apply when the optional agreement is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it. The option in the lease in this case was one of the inducements for taking the lease. *Estes* v. *Furlong,* 59 Ill. 298; *Hawralty* v. *Warren,* 18 N. J. Eq. 124; *Hall* v. *Center,* 40 Cal. 63; *Kerr* v. *Day,* 14 Pa. St. 112; *Carson* v. *Mulvany,* 49 id. 88; *Rogers* v. *Saunders,* 16 Me. 92; *Ewen* v. *Gordon,* 49 N. H. 444; *Esmay* v. *Gorton,* 18 Ill. 483; *Farwell* v. *Lowther,* id. 252.

The description of the land is insufficient, and if it was not, the possession taken by complainant under the contract locates the land, and removes all objection as to uncertainty. *White* v. *Hermann,* 51 Ill. 243; *Hurley* v. *Brown,* 98 Mass. 545; *Scanlan* v. *Geddes,* 112 id. 115; *Mead* v. *Parker,* 115 id. 413; *Spangler* v. *Danforth,* 65 Ill. 152; *Purinton* v. *Railroad Co.* 46 id. 297; *Railroad Co.* v. *McWilliams,* 71 Iowa, 164.

Whether the agreement is one for the sale of real estate is not the question. The remedy at law being inadequate, and there being no uncertainty as to what Thompson agreed to do, a court of equity will compel him to perform his covenant according to its terms. *Estes* v. *Furlong,* 59 Ill. 298; *Race* v. *Groves,* 43 N. J. Eq. 284; *Homfray* v. *Fethergill,* 1 L. R. Eq. 567; *Lovering* v. *Fogg,* 18 Pick. 540; *Orby* v. *Trigg,* 9 Mod. 2; Coote on Mortgages, 20; 1 Powell on Mortgages, 125; Fisher on Mortgages, 280; Story's Eq. Jur. sec. 1019, note 2; Pomeroy's Eq. Jur. sec. 1193; High on Injunctions, secs. 1134, 1135, 1164, 1165.

Affirmative equitable relief being necessary in order to a complete determination of the issues, the court will take control of the whole controversy and enjoin the action at law. Pomeroy's Eq. Jur. secs. 1362, 1465; *McDowell* v. *McDowell,* 114 Ill. 255; *Baker* v. *Rockabrand,* 118 id. 365; *Henwood* v. *Yarvis,* 27 N. J. Eq. 247.

Regarded either as a suit to annul a conveyance to O'Brien or compel a conveyance from him, the suit is transitory and not local, and jurisdiction is conferred by reason of the diverse residence of the parties. *Mitchell* v. *Bunch,* 2 Paige, 615; *Hickey* v. *Stewart,* 3 Hun, 750; *Hart* v. *Samson,* 110 U. S. 151; *Deklyn* v. *Watkins,* 3 Sandf. Ch. 185; *Enos* v. *Hunter,* 4 Gilm. 211; *Cooley* v. *Scarlett,* 38 Ill. 316; *Johnson* v. *Gibson,* 116 id. 294; *Baker* v. *Rockabrand,* 118 id. 365.

Having acquired jurisdiction for other purposes, the court, to administer complete relief, could enjoin proceedings at law pending in another county. *Baker* v. *Rockabrand,* 118 Ill. 365; *Lester* v. *Stevens,* 29 id. 155; *Winston* v. *Mining Co.* 30 Gratt. 686; *Multer* v. *Bayley,* 21 id. 521.

Mr. S. M. Meek, and Mr. O. R. Trowbridge, for the appellee O'Brien:

The contract relied on by appellant is not one which will be specifically enforced in a court of equity. The contract

does not contain a covenant, express or implied, on the part
of Thompson, the lessor, to sell or convey said land to Hayes,
the lessee, or to any one else, at any time, at any price, upon
any terms, or under any circumstances, present or contingent.
The contract can not be enforced for want of mutuality and
certainty. *Bromley* v. *Jeffries*, 2 Vern. 415; *Fogg* v. *Price*, 145
Mass. 513; *Gerston* v. *Sigmund*, 27 Md. 334.

The description of the land is insufficient. *Jordan* v. *Fay*,
40 Me. 130; *Miller* v. *Campbell*, 52 Ind. 125; *Hammer* v.
*McEldowney*, 46 Pa. St. 334; *Hamilton* v. *Harvey*, 121 Ill.
469; Fry on Specific Per. sec. 327.

Messrs. WHITNEY & UPTON, for the appellee Thompson.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Appellees have entered a motion to dismiss the appeal for
want of jurisdiction in this court. The contention is that a
freehold is not involved. The complainant, by his bill, seeks
to have the deed made by Thompson to O'Brien set aside, and
to specifically enforce his contract with Thompson by com-
pelling the defendants to convey the land described in the
contract, to him. We are of opinion that a freehold is in-
volved. A decision in favor of either party would determine
their right to the land, as between themselves. If adverse to
the complainant, O'Brien would retain the title under his
deed; if in his favor, the title of O'Brien would be divested.
The motion is overruled.

The first point raised by the demurrer and motion to dis-
miss in the lower court is, that the court had no jurisdiction,
the land, in respect of which specific performance was sought,
lying in Lake county, and the bill having been filed in Cook
county. It is conceded the court acquired jurisdiction of the
persons of the defendants. We need not enter upon any
discussion of this question, for the reason that it has been
repeatedly held, in this State, that jurisdiction of the person

invests the court with power to proceed to final decree in all that class of cases where it is sought to compel the execution or cancellation of deeds to land. Where the relief sought does not require the court to deal directly with the estate itself, the proceeding does not affect real estate, within the meaning of the third section of the Chancery act, and the court having the parties in interest all before it, may proceed, although the land to which the controversy relates may lie without the jurisdiction of the court. As said in *Johnson* v. *Gibson et al.* 116 Ill. 294: "The decree in such cases settles the rights of the parties before the court with respect to some contract, conveyance or fraudulent conduct, and, by attachment or other coercive means, compels the offending party to comply with the requirements of the decree." *Enos* v. *Hunter*, 4 Gilm. 211; *Cooley* v. *Scarlet*, 38 Ill. 216; *Baker* v. *Rockabrand*, 118 id. 365; *Massey* v. *Watt*, 6 Cranch, 148; *Deklyn* v. *Watkins*, 3 Sandf. Ch. 185; *Mitchell* v. *Bunch*, 2 Paige, 615; *Hart* v. *Sansom*, 110 U. S. 151.

It is also objected that the court was without jurisdiction to restrain the proceeding at law pending in Lake county. Section 3 of the Chancery act provides: "Bills for injunction to stay proceedings at law shall be brought in the county in which the proceedings at law are had." Unquestionably, if this was a bill to enjoin proceedings at law, simply, it could be brought only in Lake county. But such is not the primary object of the bill, that being, to compel specific performance of the contract for the sale and conveyance of the land. It is apparent that, it having been alleged in the bill Thompson had conveyed the land to O'Brien, complete relief could not have been afforded without making O'Brien a party defendant. He being a necessary party to the bill, therefore, and residing in Cook county, the bill might properly be brought in that county, (Rev. Stat. sec. 3, chap. 22,) and the other defendants brought in by summons in that proceeding. The court having jurisdiction of the main purposes of the bill,

would have the right to grant such ancillary or incidental re-
lief as would be necessary to make the relief sought complete.
*Lester* v. *Stevens,* 29 Ill. 155; *Baker* v. *Rockabrand, supra;*
*Winston* v. *Midlothian Mining Co.* 20 Gratt. 286; *Moler* v.
*Bailey,* 21 Gratt. 521.

The principal contention is, that specific performance of
the alleged agreement can not be decreed,—first, because it is
wanting in mutuality; second, because there is an insufficient
description of the premises alleged to have been sold; and
third, that the contract is so uncertain, indefinite and incom-
plete as to be incapable of enforcement.

*First*—The doctrine of the earlier English and American
cases, in which it was held that the want of mutuality of ob-
ligation and remedy would render the contract incapable of
specific enforcement, has, by the more modern cases, been so
modified, that optional agreements to convey, without any
corresponding obligation or covenant to purchase, will now
be specifically enforced, in equity, if made upon sufficient and
valuable consideration. And so, where the agreement to con-
vey is a part of a lease or other contract between the parties,
for which the agreement to convey forms the true considera-
tion, the want of mutuality will not avoid the contract. *Estes*
v. *Furlong,* 59 Ill. 398; *Hawralty* v. *Warren,* 18 N. J. Eq. 124;
*Hall* v. *Center,* 40 Cal. 63; *Maughlin* v. *Perry,* 35 Md. 352;
*Backhouse* v. *Mohun,* 3 Johns. 434; *Clarson* v. *Bailey,* 14 id.
484; *Willard* v. *Tayloe,* 8 Wall. 557, and cases cited.

In *Willard* v. *Tayloe, supra,* it was covenanted in the lease
executed between the parties, that the lessee should, at any
time before the expiration of the lease, have the right to pur-
chase the leased premises at a fixed price, and it was said:
"The covenant in the lease giving the right or option to pur-
chase the premises, was in the nature of a continuing offer to
sell. It was a proposition extending through the period of
ten years, and being under seal, must be regarded as made
upon a sufficient consideration, and therefore one from which

the defendant was not at liberty to recede." When the contract is unilateral, as in the case of an option to purchase, the court will, as said in *Estes* v. *Furlong, supra,* exercise its discretion with great care, and scan the conduct of the party claiming the benefit of such a contract. "But an agreement of this character can not be regarded as invalid, or as one which will not be enforced in equity." In *Hawralty* v. *Warren, supra,* it is said: "In taking a lease, a tenant may be willing to pay a high rent for a number of years, provided the landlord will give him an optional right to purchase at a fixed price, and it is not to be presumed that the landlord would agree to such a concession unless he had a consideration in the lease. Any sufficient consideration would make such unilateral contract binding in equity."

We need not further review the authorities. The contract here is under seal and imports consideration, but if it was not, it is manifest that the privilege of becoming a purchaser of the premises formed at least a part of the inducement and consideration for the acceptance of the lease by the lessee. There is practical uniformity in the authorities, that where the contract is otherwise valid, is fairly entered into, and is upon sufficient consideration, equity will enforce it, where there has been an acceptance of its terms by the vendee in apt time. Such a contract is a continuing obligation on the part of the lessor, running with the lease, which the lessee may accept, at his option, within the time limited. It is alleged in the bill that the sale was made by Thompson to O'Brien without notice to the lessee, and that immediately upon learning the same, the lessee offered, and was and still is ready and willing, and offers by his bill, to take the land at the price at which it was sold, and that he demanded of Thompson and O'Brien conveyance of the land according to the agreement. This was all he could or was required to do. *Estes* v. *Furlong,* and other cases *supra.*

*Second*—The second contention arises, as we regard it, from a misapprehension. The land is described in the lease as a tract of land in Lake county, Illinois, and "being a part of the south half of sections thirty-four (34) and thirty-five (35), in township forty-six (46), north of range twelve (12), east of the third principal meridian, more familiarly known as the 'old Merchant farm.'" The land is then described as divided into two unequal portions by the right of way of the Chicago and Northwestern Railroad Company through said land in a northerly and southerly direction, and the description concludes: "All of that portion east of said right of way, only, is leased to said party of second part." The land contracted to be sold and conveyed is the land leased. The description given is clearly sufficient to admit evidence *aliunde* the lease to identify the land. *White* v. *Hermann*, 51 Ill. 243; *Bowen* v. *Prout*, 52 id. 354; *Bybee* v. *Hageman*, 66 id. 519; *Billings* v. *Kankakee Coal Co.* 67 id. 489.

A deed or other written contract is not void for uncertainty in the description of the land sold or conveyed, if, from the words employed, the description can be made certain by extrinsic evidence of facts, physical conditions, measurements or monuments referred to in the deed. 1 Devlin on Deeds, sec. 1012; *Smith* v. *Crawford*, 81 Ill. 296; *Rockafeller*, v. *Arlington*, 91 id. 375; *Choteau* v. *Jones*, 11 id. 300; *Lyman* v. *Gedney*, 114 id. 395. And thus, a defective description of land may be aided by the conduct of the parties, such as, that the vendor put the purchaser in possession of the premises intended to be conveyed. *Purinton* v. *Northern, etc. Railway Co.* 46 Ill. 297; *Railroad Co.* v. *McWilliams*, 71 Iowa, 164.

*Third*—The more difficult question arises upon the objection that the contract is indefinite, uncertain, and incomplete in its terms. After providing that the leasehold estate shall continue for ten years, it is stipulated: "Said party of the first part hereby reserves the right or privilege of selling that portion of said land at any time from and after this date, but

no such sale of said land shall be made by said first party without first having given said second party the privilege of purchasing said land upon such terms and at the same price per acre as any other person or purchaser might have offered therefor." It is clear the latter part of this clause in the lease was inserted for the benefit of the lessee, and was intended to secure some right which he might otherwise not have had.

It is urged that the contract is void as a contract of sale, for the reason that there is no price fixed at which the sale should be made, and, it is said, if it is enforced, the court must interpolate that term into the contract. This, it is at once conceded, the courts may not do. Their duty is to enforce contracts as made by the parties. In the construction of contracts the intention of the parties, to be ascertained from the words employed, the connection in which they are used, and the subject matter in reference to which the parties are contracting, must control, and courts are powerless to interpolate terms and conditions into the contract to which the minds of the parties have not given assent. Courts will, however, look to the entire instrument, and, if possible, give such construction that each clause shall have some effect and perform some office, (2 Parsons on Contracts, 7th ed. 633,) and for this purpose will, as far as practicable, view the contract from the position of the parties at the time it was made, in order to understand their language in the sense in which it was used, (*Wilson* v. *Roots*, 119 Ill. 384, *Wood* v. *Clark*, 121 id. 362,) and such construction will be adopted, if it can consistently and reasonably be done, as will render the whole contract operative. *Field* v. *Leiter*, 118 Ill. 21; *Holmes* v. *Bemis*, 124 id. 453; Bishop on Contracts, 391-393.

The lessor reserved the right to sell the land at any time, but covenanted that no sale of the land should be made by him without first having given the lessee the privilege of purchasing. Thus far there is no uncertainty. It will be seen, the lessee was given the right to purchase the land "upon.

such terms and at the same price per acre as any other person or purchaser might have offered therefor." This language is plain and unambiguous, and admits of no construction, other than that the terms and price per acre at which the lessee might purchase were the same as offered by any other person or purchaser, and which the lessor was willing to accept. It is true, as said by counsel, the lessor was not bound to sell at all, nor was he bound to take any price offered; but he covenanted that before he would sell to any other person than the lessee, at any price, the lessee might exercise his option to take the land at the price offered,— that is, the lessee might purchase upon the terms and at the price the lessor was offered by another which he decided to accept. As already seen, the fact that by the contract the lessor was not bound to sell, would not render the contract invalid. By the contract of the parties the lessee had acquired an estate for years in the land, and, as parcel of the transaction, and entering into its consideration for the execution and acceptance of the contract, he acquired the right to purchase the leased premises if his landlord determined to sell. It may well be that the landlord was then unwilling to sell at any price, and that the tenant was willing to accept a lease under him, but wholly unwilling to accept a lease for a term of years and run the hazard of a sale to one whose interests might be inimical to his own. Indeed, the bill alleges that O'Brien was engaged in the same business as the lessee, and for which the latter was using the demised premises, and charges that the purchase by O'Brien was made for the purpose of harassing the lessee and destroying his business, and that Thompson, colluding with O'Brien in that unlawful purpose, made the sale without notice to the lessee.

It is argued by counsel for appellee O'Brien, that reservation of the right of the lessor to sell may be construed as intending that the leasehold should terminate upon a sale of the

premises, and it would seem this construction was put upon the contract both by Thompson and O'Brien. That question does not arise in this case, and it is unnecessary to determine it. If, however, that construction can be placed upon the contract, it at once becomes apparent that the right of purchase by the lessee was an important part of the consideration for his acceptance of the lease. It is clear the lessor was not bound to sell, but having determined to do so at a price and upon terms satisfactory to himself, offered by some other person or purchaser, he covenanted that he would not sell to such other person or purchaser without first giving to the lessee the right to exercise his option to purchase the land upon the same terms, and it can not be presumed that the tenant would have taken the lease without this covenant, or that the landlord would have granted the concession, without each understanding that it entered into and formed a part of the consideration moving between them.

We know of no principle of equity that is violated by such a contract, nor are we referred to any case holding that a contract of this character may not be enforced in equity. The contract is, that the lessee shall have a right to purchase at a price satisfactory to the lessor, and when fairly entered into, upon a valuable consideration, if the terms upon which the sale is to be made are fixed in the contract, or the parties have, by the contract, provided the means for their ascertainment, no reason is perceived why a court of equity may not compel its performance. The authorities are agreed that the contract must be complete,—that is, must contain the terms by the acceptance of which the grantee will become entitled to a conveyance. In most of the reported cases there has been an offer to sell or an option to purchase at a fixed price named in the written contract. But this is not necessary where the written instrument fixes a definite mode of its ascertainment. Thus, in *Fogg* v. *Price*, 145 Mass. 513, being the principal case relied upon by appellees, the covenant was:

"If the premises are for sale at any time, the lessee shall have the refusal of them." The court say: "This is simply an agreement to give the lessee the first chance to make a contract,—an agreement to sell if the parties can agree, and not otherwise. It neither fixes the price nor provides a way in which it can be fixed." And it is manifest, as said by that court, that to justify specific performance at the suit of the lessee, "a term would have to be added which is not in the contract." And the court in that case further say: "The contract certainly does not contemplate a sale to somebody else as a mode of ascertaining the price at which the lessor will sell to the lessee,"—citing *Bromley* v. *Jefferies*, 2 Vern. 415. In *Bromley* v. *Jefferies, supra,* on the marriage of the plaintiff with the daughter of Sir Rowland Berkeley, the latter covenanted that if the plaintiff survived him and had issue of the marriage, plaintiff "should have *Catheridge* £1500 less than any other purchaser would give for the same." Other disposition was made of the estate by will, the testator bequeathing £1500 to plaintiff and wife. The court refused specific performance of the covenant, "because if the estate was not to be sold, but the plaintiff was to have it, it was not practicable to know what a purchaser would give for it." The clear intimation of both of these cases is, that had there been a mode of ascertainment provided for, the holdings would have been otherwise.

According to the doctrine of some of the later cases, the difficulty found by the court in the *Bromley case* would have been overcome, but it is sufficient for the purposes of this case that the refusal was placed upon the ground of the impracticability of ascertaining the price at which the plaintiff was to have the land. Practically, these are the only cases cited that are thought to be decisive against the right to enforce the contract. The other case cited, *Buckmaster* v. *Thompson,* 36 N. Y. 558, does not involve the question here being considered.

27—149 ILL.

On the contrary, where the contract was that there should be a fair valuation of the property, this court, in *Estes* v. *Furlong, supra,* said: "This implied a reasonable estimate to be made by the parties, or if they could not agree, to be determined by the court upon proof." And it was held, that upon bill filed for specific performance, where the vendor had refused to yield to an appraisement by other persons, but arbitrarily fixed the price at a gross sum, the court must determine the value upon proof, and enforce performance accordingly, —citing *Parkhurst* v. *Van Courtlandt,* 14 Johns. Ch. 15. So in *Milnes* v. *Gery,* 14 Vesey, 401, it was held that an agreement to sell at a fair valuation may be enforced, and that if no means are pointed out in the contract to ascertain the value, the court may resort to any means adapted to the purpose. In Fry on Specific Performance, after stating (sec. 214) that "it is evident that the price is an essential ingredient in the contract, and that where this is neither ascertained nor rendered ascertainable the contract is void for incompleteness and incapable of enforcement," the author says (sec. 216): "It is not, however, necessary that the contract should determine the price in the first place. It may appoint a way by which it is to be thereafter determined, in which case the contract is perfected only when the price has been so determined." The principle governing is: When the contract appoints the mode of determining the price, and the price is determined according to that mode, the contract becomes perfect and complete, in all respects as if it had been originally fixed in the writing. *Norton* v. *Gale,* 95 Ill. 533.

The case of *Homfray* v. *Fethergill,* 1 L. R. (Eq. Div.) 516, is an instructive case on this point. The agreement there was, that no partner should sell his shares without first offering them, or it, to the other partners collectively, after notice. If they refused to buy, the shares were to be offered to the partners desirous of collectively purchasing. If no two desired to purchase jointly, then to the partners individually,

after which he might sell them to a stranger. The only limitation as to the price, upon sale to strangers, was in the condition providing that he or she should sell the same fairly for £500 per share, at least, more than the price at which he or she offered the same to his or her partners, collectively or individually. One of the partners offered his shares to the three remaining partners. One of the three refused to join with the other two, so there could be no collective purchase. A bill was filed by the two who were willing to purchase, and the court held that the offer to the partners inured to the benefit of the two who were willing to purchase, and decreed specific performance accordingly. There, it is apparent, the price was in the discretion of the seller, subject only to the limitation that he would not sell to a stranger for less than £500 per share more than he had offered to sell them for to his partners, collectively or individually. By the contract the price was to be fixed by the offer of the seller, and thereupon the right of the remaining partners to purchase became complete. See, also, *In re Houghton,* 11 Irish Ch. 136; *Lovering* v. *Fogg,* 18 Pick. 540; *D'Rutter* v. *Muldraw,* 16 Cal. 513; *Cooper* v. *Pena,* 21 id. 403; *Grove* v. *Race,* 43 N. J. Eq. 284. Here, the parties, by their contract, prescribed a mode by which the price at which the lessee was to purchase was definitely ascertainable. If the lessor received an offer for the land which he was willing to accept, that became the price at which the lessee might purchase, and, if the lessee accepted it, at which the lessor was bound to convey. It follows that the court below erred in sustaining the demurrer and dismissing the bill.

The decree will be reversed and the cause remanded for further proceedings.

*Decree reversed.*

Mr. JUSTICE CRAIG, dissenting.