# Thirza S. Scheidecker, Appellee, v. Letitia A. Westgate, Executrix, Appellant.

## Gen. No. 5,533.

1. CONTRACTS—*option to purchase construed.* An option contained in a lease construed to mean that if the lessor receive an offer for the land demised which he was willing to accept, such offer became the price at which the lessee might purchase, and that if such lessee then decided to exercise her privilege and buy at that price the lessor was bound to convey to her upon her paying the sum of money.

2. CONTRACTS—*how indefinite option may be rendered definite.* Although the precise price at which a lessee might purchase might not be named in the lease, yet if the option contained in the lease provided a method for determining such price and the price is determined according to that method, the contract is as complete as if the price had been originally fixed therein.

3. ASSUMPSIT—*when lies for money had and received.* If a lease contain an option of purchase by the lessee at the same price at which an offer of purchase might be made by a third party and such option is exercised by the lessee under a representation that a larger sum than that actually offered had been offered, the excess of purchase price may be recovered in an action of assumpsit for money had and received.

4. VERDICTS—*how excessiveness cured.* If a verdict does not include a proper deduction it is cured if it likewise failed to include a proper addition for a larger sum than such omitted deduction.

Appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911. *Certiorari* denied by Supreme Court (making opinion final).

KRAUS, ALSCHULER & HOLDEN, for appellant.

JOHN R. COCHRAN and HAYES McKINNEY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 16, 1904, David W. Westgate, the owner,

leased to Thirza S. Scheidecker certain premises in the city of Sycamore, DeKalb county, known as the Westgate Feed Stables, including therein the restaurant and second story of said buildings and the scales in the street in front thereof and the use of a certain driveway to the north side of said feed stable, there being expressly exempted from said lease the house and lot owned by Westgate lying north of the main feed shed building. The lease was to run from May 9, 1904, to May 9, 1907, for a certain monthly rental therein reserved. The lease also contained the following provisions:

"It being also understood that the party of the second part has the privilege of buying said leased premises for the sum of Thirteen Thousand Five Hundred Dollars ($13,500) and the like privilege of purchasing the house and lot now owned by first party next north and adjoining said barn and fronting on Exchange street, together with said premises for the sum of Fifteen Thousand Dollars ($15,000), during the first year of the term of this lease; but said right of purchase in said second party is not in any way to prevent first party from selling said premises to other parties, and in the event that said first party does sell said premises to other parties, then the party of the second part thereby agrees to vacate said premises at the end of the first year of the term of this lease. Party of the first part also reserves the right to sell said premises to other parties at any time during the second or third year of said term, giving to party of the second part however the privilege to purchase said premises at the price for which the same could be sold to other parties; and in the event that said premises are so sold to other parties, then the party of the second part hereby agrees to vacate said premises and treat this lease as cancelled at the end of the year during which said sale is made."

On a certain day in August, 1905, J. B. Stephens, the

attorney of Westgate, went to Mrs. Scheidecker in the
forenoon by direction of Westgate and told her that
Westgate had a purchaser ready to take the property
at $14,000, and that if she wished to exercise her op-
tion to purchase the feed stables, as she had a right to
do, at that price, she must signify her intention to do
so by four o'clock that afternoon.   Before four o'clock
that afternoon she notified Stephens she would take
the property.   A deed was prepared from Westgate
to her dated August 23, 1905, Westgate and wife exe-
cuted and returned it to Stephens and he presented it
to the bank in Sycamore and was paid $14,000 therefor
in behalf of Mrs. Scheidecker. Afterwards Mrs. Schei-
decker received information that Westgate in fact
contracted to sell this  property to  H. F. Witt for
$12,000 and, conceiving that under her lease she had a
right to buy this property for $12,000 and that she had
been deceived and defrauded out of $2,000, she brought
suit against Westgate  in the circuit court  of Kane
county, where Westgate then lived; but, not getting
service of summons in the lifetime of Westgate, she
began the present suit by filing a claim therefor against
his estate in the probate court.   The claim was disal-
lowed in the probate court and she appealed to the cir-
cuit court where, upon a jury trial, she had a verdict
for $2,000.   The defendant moved for a new trial which
was denied, claimant had judgment, to be paid in due
course of administration, and the executrix appeals
therefrom.

Appellant's main contention is that the provisions
of the lease giving appellee an option to buy are so
vague and uncertain as to be inoperative.   We are of
opinion that this case is substantially governed by the
principles laid down in Hayes v. O'Brien, 149 Ill. 403,
and that the meaning of this lease is that if Westgate
received an offer for the land which he was willing to
accept, that became the price at which Mrs. Scheidecker

might purchase, and that if she then decided to exercise her privilege and buy at that price Westgate was bound to convey to her upon her paying the sum named. It is true the precise price at which Mrs. Scheidecker might purchase was not named in the lease, but the law is that where the contract provides a method for determining the price and the price is determined according to the method prescribed in the contract, the contract is then as complete as if the price had been originally fixed in the contract. The case of Folsom v. Harr, 218 Ill. 369, relied upon by appellant, is distinguishable from this case by the fact that there the contract did not appoint any method by which the price should be determined. We are therefore of opinion that this was a valid and enforceable contract. Graham was acting as a real estate agent at Sycamore; Westgate then lived in La Salle county. Westgate had placed the feed barn in the hands of Graham to sell. Graham found Witt and went with him, early in August, 1905, to La Salle county to see Westgate and the parties there entered into a written contract for the sale of the barn by Westgate to Witt for $12,000, and $100 was paid on behalf of Witt to Westgate to bind the bargain. This contract was not produced and it is not certain whether it stated when Witt would be let into possession, but the proof shows that it was at least orally stated and understood that he would obtain possession the first of March following. Under the lease between Westgate and Mrs. Scheidecker, it was the duty of Westgate to inform Mrs. Scheidecker of this contract, and she had a right to buy the property at that price under the provisions of her lease. Westgate never did inform her of that contract. Some days later Westgate went to Sycamore and went to his attorney, Stephens, to arrange for having the conveyance made to Witt. His attention was then called to the provision in the lease giving Mrs. Scheidecker a right

to buy.   Thereafter Westgate, Witt and Graham met in Sycamore and it was decided that Westgate and Witt should go and see Mrs. Scheidecker, and they did so. Graham went with them as far as the nearest street corner.   Graham testified that it was arranged between Westgate and Witt that they should tell Mrs. Scheidecker that Witt had contracted to pay $14,000 for the property, and that if she thereupon bought the property, under her lease, Westgate should have $12,-000 and Witt $2,000.   At the interview, however, it seems that no sum was mentioned.   The proof is that at that interview Mrs. Scheidecker was told that Witt had bought the property or had made arrangements to buy it, and she replied that she had the right to buy the property under her lease.   A few days later Westgate directed Stephens to tell Mrs. Scheidecker that if she wanted the property she would have to pay $14,000 for it that day,   and Stephens went   and told Mrs. Scheidecker that Westgate had sold the barn and that under the lease she had the first privilege of taking it, and that it was a law suit between Mrs. Scheidecker and Westgate if he deeded it to Witt, and a law suit between Westgate   and Witt if he deeded   it to Mrs. Scheidecker, and that Westgate did not want to lose the sale of it, and if Mrs. Scheidecker wanted it she must make up her mind by four o'clock that afternoon, and the price was stated as $14,000.   Stephens testified that he informed Mrs. Scheidecker   on that day that Westgate had a purchaser ready to take the property at $14,000 and if she wanted to take it under her option that was the price and she must signify her disposition by four o'clock that afternoon.   Thereupon she got the money and paid him as soon as he could get a deed executed and delivered.   If these were the facts and all the material facts, then Westgate received from Mrs. Scheidecker $2,000 for this property which she was not bound to pay therefor; and she could have com-

pelled a conveyance to her of the property for $12,000 under the facts above stated. Under the facts above stated this $2,000 is money of the plaintiff, which Westgate obtained and which in equity and good conscience he had no right to detain but ought to refund, and an action for money had and received can be maintained by Mrs. Scheidecker therefor. Taylor v. Taylor, 20 Ill. 650; Board of Supervisors v. Manny, 56 Ill. 160; First National Bank v. Gatton, 172 Ill. 625; Fay v. Slaughter, 194 Ill. 157. Appellant contends that it was necessary for appellee to prove that the premises were not worth $14,000, and that she can only recover what she paid in excess of the real value of the property. This is supported by ingenious argument, but we consider it unsound. An old livery stable has no specific value. Its value would be a matter of opinion only and upon which opinions would necessarily differ. When Westgate contracted to sell this feed barn to Witt and Witt contracted to buy it for $12,000, Mrs. Scheidecker had a right to buy it at that price, regardless of the opinions of any one as to its actual value.

Appellant sought to show that after appellee declared she would buy the property Witt made a written proposition to pay $14,000 for it and that therefore Mrs. Scheidecker then became bound to pay $14,000 if she bought the property, and hence cannot recover here. On that subject two questions were litigated and were submitted to a jury, viz., whether Witt did make such an offer, and whether it was made in good faith or collusively. Witt swears he did not make the offer to Westgate but delivered the proposition in writing to Stephens. Stephens testified that he did not receive any such proposition from Witt. After Westgate died Stephens turned over to the executrix Westgate's papers in his possession. Appellant did not introduce any such writing in evidence. If such a writing was tendered, it is a doubtful question under the evidence

whether it was made in good faith or only for the purpose of compelling Mrs. Scheidecker to pay $14,000 for the property if she bought at all, notwithstanding that the only price intended to be enforced between Westgate and Witt was $12,000. The conversation detailed by Graham as taking place while Westgate and Witt were on their way to see Mrs. Scheidecker shows that they then had an agreement between themselves to deceive her as to the price Witt had agreed to pay. The deed from Westgate to Mrs. Scheidecker was dated August 23. Another deed was prepared of that same date from Westgate to Witt for the house and lot north of the feed barn, which stated the consideration at $1600 and Westgate acknowledged it on August 24. Witt testified that $1600 was not the true consideration and he declined to state what the true consideration was and said he could not honorably tell it. When all the evidence is considered together, it is obvious that it tended to show either that Witt did not make any such offer of $14,000 or else that the offer was not made in good faith but under some arrangement by which if he got the property it should in fact cost him but $12,000, as his contract provided. The jury were instructed at the request of appellant that if, after Witt agreed to pay $12,000 and after he found that the lease gave Mrs. Scheidecker an option to buy, Witt in good faith offered to pay $14,000 for the property and was ready, willing and able to pay that amount for it, then their verdict should be for appellant. By their verdict then the jury have found, either that Witt did not make such offer or that he did not make it in good faith, intending to pay that sum if his offer was accepted. The trial judge approved the conclusion of the jury and we see no reason to disturb it upon the facts.

Complaint is made of the two instructions given for appellee, but we find them unobjectionable. When Witt agreed to buy at $12,000, it was orally agreed

that he should pay Graham a commission of $300; and it is therefore contended that the agreed purchase price was really $12,300, and that appellee should only have recovered $1,700. We deem it unnecessary to discuss this question, for we see no reason why appellee was not entitled to recover interest and the court so instructed the jury, and that feature of the instruction is not questioned here. The interest to which appellee was entitled would far exceed the sum of $300.

The judgment is therefore affirmed.

*Affirmed.*