### Romeo A. Owings, Executor, Appellee, v. Lewis L. Lehman, Appellant.

1. CONTRACTS, § 65*—*when agreement as to price sufficiently certain.* A contract for the sale of bank stock which provides that it shall be "at $230.00 per share with any additions there may have been made to the contingent or surplus fund since the date of this agreement," is not void for uncertainty in its terms as to the price to be paid for the stock.

2. CONTRACTS, § 143*—*when option contract not in violation of Statute of Wills.* An option contract for the sale of bank stock which confers on one party a priority of privilege to purchase, in the event that the other desires to sell, at any time within ten years from its date, and makes it binding upon the latter's heirs, executors or administrators and directs that in case of such latter's death before the expiration of the option period, her executor or administrator shall deliver the stock at the agreed price, is not invalid as an attempted testamentary disposition of the stock without compliance with the Statute of Wills.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. CONTRACTS, § 135*—*when agreement to give priority of privi-lege to repurchase stock valid.* An agreement whereby the buyer of stock in a national bank gives the seller the priority of privilege to purchase, should the buyer wish to sell for a period of ten years, at an agreed price per share with any additions there may have made to the contingent or surplus fund after the date of the agreement, is not unreasonable nor contrary to public policy.

Appeal from the City Court of Mattoon; the Hon. JOHN McNUTT, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded with directions. Opinion filed October 16, 1914.

VAUSE & HUGHES, for appellant.

HENLEY & DOUGLAS, for appellee.

FRED A. KINZEL, for all minor defendants.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On the eleventh day of October, 1910, Cora R. Moore, an aged widow, owned ten shares of the capital stock of the Mattoon National Bank and on that day executed her last will and testament and disposed of said stock therein by certain specific legacies. In the spring of 1911 the bank went into voluntary liquidation and the ten shares of stock owned by Mrs. Moore participated in the distribution of the assets of the bank and in due course were fully liquidated. During the process of liquidation of said bank, appellant, Lehman, and others organized the National Bank of Mattoon and appellant became a large subscriber of the capital stock thereof. Mrs. Moore was not a subscriber to the capital stock of the new bank and did not in any manner participate in its organization.

After the organization of the National Bank of Mattoon appellant sold portions of the capital stock subscribed by him and had some contracts for the re-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

purchase of the stock printed for his own personal use. This form was as follows:

"In consideration of the sale of .......... shares of the capital stock of the NATIONAL BANK OF MATTOON to me by Lewis L. Lehman, I hereby agree in the event that I desire to sell the same at any time within ten years, that I will give said Lehman or his heirs or assigns the priority of privilege to purchase the same at his option for ten days. This option to be binding and obligatory upon my heirs, executors or administrators."

On July 24, 1911, Mrs. Moore and appellant negotiated for the sale to her of ten shares of the stock of the new bank. At this time Mrs. Moore was a very old lady, and as a result of these negotiations appellant added to the printed form with pen and ink the following clause:

"And in case of my prior death, I hereby direct my executor or administrator to deliver to the said Lewis L. Lehman the said ten shares of stock at $230 per share with any additions there may have been made to the contingent or surplus fund since the date of the agreement."

Mrs. Moore executed the contract and delivered the same to appellant and received a certificate for ten shares of the stock in the National Bank of Mattoon. Mrs. Moore died on the eighth day of February, 1913. Her executor filed his bill in the City Court in the city of Mattoon for a construction of this contract, and averred therein that owing to the happening of events subsequent to the execution of Mrs. Moore's last will it was impossible to carry out the provisions of the will, and prays that said will may also be construed and that he be advised in regard to his duties thereunder. Appellant filed an answer to the bill, which by order of the court was ordered to stand as a cross-bill, admitting the principal facts in regard to the execution of the will by Mrs. Moore, the liquidation of the stock of the Mattoon National Bank, the organization of the National Bank of Mattoon, the sale of the ten

shares of stock in the latter bank by him to Mrs. Moore, and avers the validity of the contract of repurchase and that he is entitled to receive from the executor the said ten shares of stock in the latter bank upon the payment by him of $2,450, the same being the value of said stock at $230 per share, with the additions that have been made to the contingent or surplus fund since the date of the sale, which amount he tenders in open court to be paid to the said complainant upon the assignment and delivery to him of the certificate for said stock. The answers of the various other defendants aver that the contract is void on two grounds: First, that it is too uncertain in its terms as to the price to be paid for the stock; and second, that it is an attempted testamentary disposition of the same and void because not properly executed under the provisions of the Statute of Wills. The chancellor held that the contract was uncertain and ambiguous and not binding upon the estate of Mrs. Moore and that the answer of appellant, in so far as the same stands as a cross-bill, should be dismissed for want of equity.

We do not think the holding of the chancellor that the contract is void for uncertainty can be sustained. The price to be paid for the stock was $230 per share with any additions that might have been made to the contingent or surplus fund since the date of the agreement. This was readily ascertainable. In the case of *Hayes v. O'Brien,* 149 Ill. 403, where there was a provision in a lease of certain land whereby the lessor reserved the right to sell the land at any time, but covenanted that no sale of the land should be made by him without first giving the lessee the privilege of purchasing upon such terms and at the same price per acre as any other person or purchaser might have offered therefor, the Supreme Court held: "This language is plain and unambiguous, and admits of no construction, other than that the terms and price per acre at which the lessee might purchase were the same as offered by

any other person or purchaser, and which the lessor was willing to accept. * * * In most of the reported cases there has been an offer to sell or an option to purchase at a fixed price named in the written contract. But this is not necessary where the written instrument fixes a definite mode of its ascertainment.''

The price to be paid for the stock as fixed by the contract in this case can be much more definitely determined than the price for the land in the case cited; in fact, it is absolutely ascertainable.

In order to determine whether the contract is void as being an attempted testamentary disposition of the stock without the formality of the execution of the contract in accordance with the Statute of Wills, it is necessary to ascertain, if possible, what was the intention of the parties. The fundamental theory of a will is that the disposition of property made therein by devise or bequest is in the nature of a gift. *Beatty's Estate v. Western College of Toledo*, 177 Ill. 280. The contract in question in this case does not contain any elements in the nature of a gift, but on the contrary contains those of an option contract. In attempting to arrive at the intention of the parties to such a contract it is pertinent to consider the conditions surrounding the parties at the time. The new bank was organized by appellant and others and appellant had subscribed for a large portion of the stock. It is not unreasonable to presume that in disposing of some of this stock he would sell it only to individuals whom he cared to have connected with the bank and that he did not want to have the stock get beyond his control, and with that object in view made each purchaser of the stock sign the printed option contract which he had prepared for that purpose, giving him the privilege of rebuying the stock of the bank if the purchaser desired to sell. Mrs. Moore had owned ten shares of stock in the Mattoon National Bank, which went into liquidation, and it is evident she desired to invest the money

derived from this stock in the new bank organized by appellant. She was advanced in years, her life expectancy was short, and with this condition in mind the written portion of the contract was added to the printed contract and executed by her. The consideration for the stock was the money price thereof at the time of the sale and the privilege of appellant to repurchase the same at a certain price in the event she desired to sell the same, or, in case she should die, the privilege of repurchasing the same at a certain price from her executor or administrator. That the incorporators and stockholders of a national bank should seek to control the stock of such an institution or to choose to whom the stock should be sold is not unreasonable nor contrary to public policy. The success of such an institution may largely depend upon the harmony that prevails among the stockholders thereof, and it is certainly for the public interest that such institutions should be operated with success. We fail to see anything unreasonable or obnoxious or uncertain in the terms of this contract, nor do we think it can be held to be an attempted testamentary disposition of the stock and void under the Statute of Wills. The decree of the City Court of the city of Mattoon must therefore be reversed and the cause remanded with directions to enter a decree in accordance with the opinion herein expressed.

*Reversed and remanded with directions.*