OTTO LOWY

*v.*

WILLIAM V. McMINIMEN et al.

[Submitted June 14th, 1922.   Decided July 11th, 1922.]

Where the complainant sold his invention to a corporation under a contract providing for specified royalties on sales, and the corporation later sold the invention under a contract providing for certain royalties, and the complainant and the corporation then contracted that the former's royalties should remain unimpaired, and that they would be adjusted upon an equitable basis, the last contract could be specifically enforced, as it provided a standard for determining the amount of the royalties.

On bill, &c.   On final hearing.

*Mr. Frank E. Bradner,* for the complainant.

*Messrs. Henry J. Gaede & Dougal Herr,* for the defendants.

BACKES, V. C.

This bill is in effect a suit for the specific performance of a contract.   Dr. Lowy, the complainant, invented a process for permanently liquifying powdered arsenical compounds used in the treatment of syphilis, for which he obtained letters patent.   He sold his invention to one McMinimen, who, in turn, assigned it to the Lowy Laboratory, Inc., a corporation which he formed for the purpose of making and marketing the compounds.   Dr. Lowy received a cash consideration and some of the capital stock, and was to receive an annual royalty of the gross sales in the United States on the following sliding scale:

For all sales of

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| 1 | to | 100,000 | ampules, 6/10 grain arsphenimine | 10% |
| 100,001 | to | 200,000 | ampules, 6/10 grain arsphenimine | 8% |
| 200,001 | to | 300,000 | ampules, 6/10 grain arsphenimine | 6% |
| 300,001 | to | 400,000 | ampules, 6/10 grain arsphenimine | 4% |
| 400,001 | to | 500,000 | ampules, 6/10 grain arsphenimine | 2% |

The royalty on sales outside of the United States was also on a scaling rate, but it plays no part in this suit. The company assumed the contract, paid the doctor royalties from time to time up until January, 1921, but the output never reached the maximum of the first division of one hundred thousand ampules annually. The business was not profitable and in July, 1921, the company was about to go on the financial rocks. Failure was imminent and bankruptcy was staring it in the face, when Dr. Lowy, co-operating with his associates, interested E. R. Squibb & Sons, a wholesale drug supply house, and negotiations resulted in a contract granting to Squibb & Sons the sole and exclusive license to make, use and sell the products of Dr. Lowy's invention, for which Squibb & Sons agreed to pay the company "for the plain arsphenimine solution a royalty of forty-five cents for each gram of arsphenimine contained in the solution sold by Squibb, calculated according to analysis." There was also a provision for an adjustment of the royalties in the event that competitors of Squibb & Sons should undersell them, the formula of which is set out in the contract. Dr. Lowy was personally a party to the agreement. It was the understanding beforehand that his right to royalties under his contract was to remain unimpaired, but a new rate had to be fixed, and it was agreed that if he consented to the Squibb & Sons' contract his royalty would be adjusted upon "an equitable basis." The bill so charges and it is admitted by the answer. The parties have not been able to agree. The principal defence is an attack upon the jurisdiction of the court, the contentions being that the bill is one for an accounting and cognizable at law, citing *Daab* v. *N. Y. C. & H. R. R. Co., 70 N. J. Eq. 489; Olds* v. *Regan, 32 Atl. Rep. 827,* and that the court is powerless to fix the rate of the royalty, and that the remedy is at law for a breach of the contract. The suit is manifestly for more than an accounting—the accounting is incidental to the main relief for enforcement. At the hearing the defendant's officers professed anxiety to settle on a royalty basis, and to test their sincerity I suggested that they with-

draw their jurisdictional objections and allow the court, unhampered, to adjust their differences, which they promptly rejected, in the hope, no doubt, of driving the complainant into the law courts for damages and ridding themselves of the contract. The remedy at law is entirely inadequate. Damages could not be even approximately measured. The fruits of Dr. Lowy's invention depend upon the successful marketing of the product. What that will be is problematical. *Feigenspan* v. *Nizolek, 71 N. J. Eq. 382; Peoples Brewing Co.* v. *Levin, 81 Atl. Rep. 1114; affirmed, 78 N. J. Eq. 583.* It is Dr. Lowy's privilege to have his contract specifically enforced, and as the parties themselves have established a standard by which the royalty may be determined with certainty—"equitable basis"—it is within the power of equity to grant him relief. "It is not necessary that the price be specified in figures or words at length. It is sufficient if a standard is established by which the price may be determined with certainty; as, for instance, the 'fair value' or 'market value' (*VanDoren* v. *Robinson, 16 N. J. Eq. 256*), or at a price offered by another upon a certain event, and accepted (*Race* v. *Groves, 43 N. J. Eq. 284; Hays* v. *O'Brien, 149 Ill. 403*), or the appraisal of arbitrators (*Woodruff* v. *Woodruff, 44 N. J. Eq. 349*)." *McClung Drug Co.* v. *City Realty and Investment Co., 91 N. J. Eq. 216; affirmed, 92 N. J. Eq. 237.* I can perceive no distinction in standards between "fair value" or "market value" and "an equitable basis," as used and understood by the parties. It is said that the royalty contracts of Dr. Lowy and Squibb & Sons are so inharmonious as not to admit of an adjustment on an equitable basis. That is more apparent than real. The adjustment is simply one of proportional abatement, and simple of computation, thus: by taking as the basis for the calculation, Lowy Laboratory's net profit per gram of arsphenimine earned under its own manufacture and that derived from the Squibb & Son's contract, and apportioning the latter to the Lowy company and Dr. Lowy on the basis of the division of profit prevailing during the existence of their contract. I

am making the calculation upon the first division of output of
one hundred thousand ampules. The uncontradicted testi-
mony is that the Lowy Laboratory's gross selling price per
ampule of six-tenths grain of arsphenimine was $2.26. Of
this, Dr. Lowy was entitled under his contract to twenty-
two and six-tenth cents. The cost of production and market-
ing was $1.90, leaving a net profit of thirty-six cents, divided
thus, twenty-two and six-tenths to Dr. Lowy and thirteen and
four-tenths to Lowy Laboratory, Inc.—approximately two-
thirds and one-third. The royalty from Squibb & Sons to
the Lowy Laboratory is forty-five cents per gram, or twenty-
seven cents for six-tenths of a gram. The rate per gram of
profit to the Lowy Laboratory, under its own output, was
sixty cents. Its income from Squibb & Sons, at forty-five
cents per gram, means simply a drop of twenty-five per cent.,
which should be proportionally borne. Thus, calculated on
the basis of a gram at forty-five cents, Dr. Lowy's yield will
be twenty-eight and twenty-five onehundredths, and the
Lowy Laboratory's sixteen and seventy-five onehundredths.
But Dr. Lowy is willing to make concessions and offers to
accept, as counsel says in his brief, as an equitable division,
sixty per cent. for the Lowy Laboratory and forty per cent.
to him of the proceeds of the royalties coming from Squibb &
Sons. It will be so decreed and an accounting ordered.

For present purposes the foregoing will suffice. If, in the
future, sales reach beyond one hundred thousand ampules, or
one hundred thousand units of six-tenths gram of arspheni-
mine, then the sliding scale above set out will be a factor to be
taken into the reckoning, but not until the division of the
royalty from Squibb & Sons, calculated on the equity basis,
touch the sixty to forty ratio accepted by the complainant.

The bill can also be sustained on this theory. If the
arrangement to adjust the royalty on an equitable basis be
not an enforceable contract, then the original contract be-
tween the two may be enforced. That contract retains its
legal vitality, save as to the percentage of royalty. If the
Squibb & Sons' contract should terminate and Lowy Lab-

oratory, Inc., should resume manufacturing, it would be restored to its full vigor. On an accounting therefor, to which the complainant is entitled at all events, he would be allowed his royalty, modified, however, consistently with the new situation he helped to bring about. This, clearly, would not be less than the complainant agreed to take.